David M. Kelly (Pro Hac Vice Pending)
Sara Copeland Parker USB #16130
**KELLY IP, LLP**
1300 19th Street, NW, Suite 300
Washington, D.C. 20036
Telephone:  (202) 808-3570
Facsimile:  (202) 354-5232
Email: david.kelly@kelly-ip.com
Email: sara.parker@kelly-ip.com

Juliette P. White, USB #9616
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
JWhite@parsonsbehle.com
ecf@parsonsbehle.com

*Plaintiffs BMW of North America, LLC and
Bayerische Motoren Werke AG*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BMW OF NORTH AMERICA, LLC and BAYERISCHE MOTOREN WERKE AG, <br><br> Plaintiffs, <br><br> vs. <br><br> AMMAR ISSA, RHEINGOLD USA, LLC, and RHEINGOLD USA, INC., <br><br> Defendants. | **VERIFIED COMPLAINT FOR TRADEMARK COUNTERFEITING, TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, COPYRIGHT INFRINGEMENT, AND CYBERSQUATTING** <br><br> Case No. _____ <br><br> The Honorable _____ <br><br> **JURY DEMAND** |

Plaintiffs BMW of North America, LLC and Bayerische Motoren Werke AG

(collectively, "BMW"), by their undersigned attorneys, bring this action against Ammar Issa,

Rheingold USA, LLC, and Rheingold USA, Inc. (collectively, "Defendants"), and allege as follows for their Verified Complaint, upon actual knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1.       This is a civil action for trademark counterfeiting, trademark infringement, trademark dilution, cybersquatting, and copyright infringement arising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act, 17 U.S.C. § 101, *et seq.*, Utah state law, and common law. BMW seeks equitable and monetary relief for Defendants' actions that constitute willful violations of (a) BMW's federally registered BMW word mark and BMW logo shown below, (b) BMW's federally registered software marks RHEINGOLD, ISTA, and ISTA/P, (c) BMW's common-law trademark rights in its ISTA/D, ICOM and EDIABAS marks, and (d) BMW's copyright rights in its ISTA software.



2.       Defendants' unlawful activities described below infringe BMW's trademarks; are likely to dilute and tarnish BMW's famous marks; constitute trademark counterfeiting of BMW's trademarks; infringe BMW's copyrights in its ISTA software; and have caused and will continue to cause, unless enjoined, irreparable harm to BMW and the consuming public.

3.       BMW seeks injunctive and other relief from Defendants' unauthorized use of BMW's trademarks and BMW's ISTA software, including without limitation an injunction enjoining Defendants from engaging in such unlawful activities, statutory damages for trademark

counterfeiting, statutory damages for cybersquatting, statutory damages for copyright

infringement, Defendants' profits, BMW's actual damages, and BMW's attorneys' fees and

costs.

## THE PARTIES

4.     Plaintiff BMW of North America, LLC ("BMW NA") is a Delaware limited

liability company with its principal place of business at 300 Chestnut Ridge Road, Woodcliff

Lake, New Jersey 07677 and its manufacturing headquarters at 1400 Highway 101 South, Greer,

South Carolina 29651. BMW NA is a wholly owned subsidiary of BMW (US) Holding

Corporation, a Delaware corporation, which is a wholly owned subsidiary of Bayerische

Motoren Werke AG ("BMW AG"). BMW NA is responsible for the wholesale distribution of

BMW vehicles throughout the United States.

5.     Plaintiff BMW AG is a corporation organized under the laws of the Federal

Republic of Germany, with its principal place of business at Petuelring 130, Munich, Germany,

and is the owner of the trademarks and copyrights asserted in this action. BMW AG designs and

manufactures motor vehicles, parts, and other products for sale in Europe and for export and sale

throughout the world.

6.     Defendant Ammar Issa ("Issa") is a resident of Lehi, Utah. Issa is the former

owner of the domain name RHEINGOLDUSA.COM and former operator of the associated

website, and upon information and belief is the owner of the privately registered domain name

RHEINGOLDUSA.NET because he is the operator of the associated website. Issa is not an

authorized BMW dealer, is not an authorized licensee of BMW or otherwise authorized to use

BMW's trademarks, and is not authorized to sell BMW's ISTA software. Issa is also the

registered agent for Rheingold USA, LLC and Rheingold USA, Inc.

7.     Defendant Rheingold USA, LLC is a Utah limited liability company with its principal place of business at 3450 N. Triumph Blvd. #102, Lehi, UT 84043. Issa is the sole member of Rheingold USA, LLC. Rheingold USA, LLC was converted to Rheingold USA, Inc. on February 19, 2019, but on information and belief, it was an active company throughout most of the events described below. Rheingold USA, LLC is not an authorized BMW dealer, is not an authorized licensee of BMW or otherwise authorized to use BMW's trademarks, and is not authorized to sell BMW's ISTA software.

8.     Defendant Rheingold USA, Inc. is a Utah corporation with its principal place of business at 3450 N. Triumph Blvd. #102, Lehi, UT 84043. Rheingold USA, Corp. is not an authorized BMW dealer, is not an authorized licensee of BMW or otherwise authorized to use BMW's trademarks, and is not authorized to sell BMW's ISTA software.

## JURISDICTION AND VENUE

9.     This action arises under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, the Copyright Act, 17 U.S.C. § 101, *et seq.*, Utah state law, and common law.

10.    This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338(a) and (b). Because the parties are citizens of different states and the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, this Court also has jurisdiction under 28 U.S.C. § 1332. Jurisdiction over the state law claims is also appropriate under 28 U.S.C. § 1367(a) and principles of pendent jurisdiction because those claims are substantially related to the federal claims.

11.     This Court has personal jurisdiction over Defendants, and venue is proper pursuant to 28 U.S.C. § 1391(b). Defendants reside in and/or have their principal place of business in this District and, upon information and belief, a substantial part of the events or omissions giving rise to the claim occurred and is occurring in this District.

## BMW AND ITS PRODUCTS AND SERVICES

12.     BMW is one of the most successful manufacturers of automobiles and motorcycles in the world.

13.     BMW owns the famous and federally registered trademark BMW and the BMW trade name (collectively, the "BMW Word Mark").

14.     BMW also owns its famous and federally registered BMW logo shown below (the "BMW Logo") (collectively, the BMW Word Mark and BMW Logo are the "BMW Marks"):



15.     Under the BMW Marks, BMW manufactures, sells, and distributes an array of automobiles and motorcycles and associated software, parts, and accessories, and provides numerous services, such as maintenance and repair services, financing, leasing, insurance, and warranty services. BMW also sells a wide variety of merchandise bearing the BMW Marks, including apparel, mugs, and writing instruments. BMW has manufactured, marketed, and sold millions of vehicles in the United States under the BMW Marks.

16.     BMW has for decades utilized a network of authorized dealers in the United

States to market both new and certified pre-owned BMW vehicles, vehicle parts and accessories, other products including software, hardware, and apparel, and services such as rental, financing, and maintenance services. BMW currently has more than 340 authorized BMW dealers in the United States.

17.     BMW's commercial success under the BMW Marks in the United States has been tremendous. BMW and its authorized dealers and licensees have sold many billions of dollars of products and services under the BMW Marks in the United States over the years. BMW spends tens of millions of dollars every year in the United States to extensively advertise, market, and promote products and services offered under the BMW Marks through a variety of media, including television and print advertisements, the Internet, and high-profile sponsorships. For example, BMW sponsors the PGA Tour's BMW Championship.

18.     In use in the United States since 1955, the BMW Marks enjoy unquestionable fame as a result of long use, extensive advertising, massive commercial success, substantial publicity, and favorable public acceptance and recognition. Indeed, the BMW Marks have become among the most recognized brands in the world, and have consistently been ranked in many lists of top brands for years, including No. 13 in "Best Global Brands" by Interbrand in 2018 and No. 20 in "The World's Most Valuable Brands" by Forbes in 2018. These rankings are attached as Exhibit 1.

19.     Furthermore, a number of federal district courts have recognized that the BMW Marks are famous. *See BMW of N. Am., LLC v. Eurotech Wheels, LLC*, No. 08 CV 0171 JM (WMC), 2008 WL 11337018, at *1 (S.D. Cal. July 25, 2008) (finding that the BMW Word Mark and BMW Logo are both famous); *BMW of N. Am., LLC v. Quality Star Benzz LLC*, No. 2:12-

CV-00889-GMN, 2013 WL 1338233, at *1 (D. Nev. Mar. 29, 2013) ("BMW NA has expended

millions of dollars in advertising across the United States in connection with its Marks [including

the BMW Logo] making them famous."); *BMW of N. Am., LLC v. Eurocar Tech., L.L.C.*, No.

613CV1215ORL18DAB, 2014 WL 10748119, at *3 (M.D. Fla. July 15, 2014), *report and

recommendation adopted,* No. 613CV1215ORL18DAB, 2014 WL 10742620 (M.D. Fla. Aug. 5,

2014) (finding that the BMW Logo is a famous mark).

### BMW'S ONLINE NETWORK

20.     BMW has for many years used its BMW Marks in connection with its network of

websites dedicated to advertising, promoting, and/or offering its automobiles, motorcycles, and

related products and services. BMW's online network, which BMW has operated since at least as

early as 1996, receives many millions of hits each month. BMW's websites are accessible via

domain names composed of the BMW Word Mark alone and combined with relevant geographic

and/or descriptive terms. For example, BMW's websites accessible in the United States include

its BMW.COM, BMWGROUP.COM, and BMWUSA.COM sites.

21.     In addition to its corporate websites, BMW has for many years permitted its

authorized dealers to use trade names and domain names comprising in part the BMW Word

Mark for their authorized BMW businesses. Hundreds of dealers across the country use and have

used such names for many years. BMW's authorized dealers' trade names and domain names

frequently comprise the BMW Word Mark and the dealer's name and/or geographic location.

For example, BMW's authorized dealers in Utah use the domain names BMWUTAH.COM,

BMWOFMURRAY.COM, and BMWOFPLEASANTGROVE.COM.

22.     As a result of these longstanding naming traditions followed by BMW, as well as

its authorized dealers, persons encountering domain names consisting of BMW's Word Mark,

alone or combined with additional terms, will believe that the domain names and corresponding

websites are owned, operated, or authorized by BMW.

**BMW'S TRADEMARK REGISTRATIONS FOR THE BMW MARKS**

23.     In addition to its longstanding and strong common-law rights in the BMW Marks,

BMW AG owns, among others, the following federal registrations for the BMW Marks:

| Mark | Reg. No.<br>Reg. Date | Goods and Services |
|------|------------------------|---------------------|
| BMW | 0611710<br>9-6-1955 | Automobiles, motorcycles |
| BMW | 5289891<br>9-19-2017 | Apparatus for recording, transmission and reproduction of data; data processing apparatus; data processors; data processing computers in motor vehicles; computer hardware; central processing units (CPU); computer peripherals; blank USB flash drives; USB cables; USB charging ports for use in vehicles; USB dongles being wireless network adapters for USB multimedia connectivity; audio and video recordings featuring images of or information about vehicles; car navigation computers; software for use in monitoring, operating and control of vehicles; computer software for connecting remotely to computers or computer networks, for the enabling of access or entrance control, for using the internet, for compilation of driver data, for providing electronic software updates; diagnostic vehicle software; computer software, hardware and electric cables for use in diagnosis, repair, and maintenance of vehicles; electronic software and software updates, namely, downloadable computer software and associated data files for installing or updating computer software in the field of vehicles or in the field of vehicle maintenance and repair; database management software in the field of vehicles and vehicle parts; electronic databases in the field of automobiles recorded on computer media; computer |

| Mark | Reg. No. Reg. Date | Goods and Services |
|------|--------------------|--------------------|
|  |  | software for providing searchable or online databases of information and data in the field of vehicles, aftersales and parts logistics; electronic publications, namely, instruction manuals for vehicles, vehicle servicing recorded on computer media or in downloadable form; electrical cables; Retail store services and online retail store services in the field of motor vehicles, parts and accessories (among other goods and services in Class 9.) |
| BMW | 1170556 9-22-1981 | Repair and maintenance services for motor vehicles and motor vehicle engines; retail motor vehicle and motor vehicle engine dealership services |
| BMW | 1627241 12-11-1990 | Clothing, namely shirts, tee shirts, polo shirts, sweat shirts, sweaters, blouses, pullovers, vests, unknitted jackets, anoraks, cardigans, pants, ties, caps, scarves, gloves, leather wind resistant jackets, leather jackets, leather suits, rain suits, boots |
| BMW | 5333863 11-14-2017 | Pens, pencils, notepads, notebooks, books in the field of automobiles, posters, calendars, and decals; printed materials, namely manuals, brochures, and catalogs pertaining to the features and controls, operation, maintenance, service and repair, and technical facts and specifications of motor vehicle; paper labels, adhesive labels, and adhesive stickers; boxes, namely, stationery boxes, cardboard boxes and paper boxes; shopping bags made of paper or cardboard, and containers, storage containers and packaging containers made of paper or cardboard; merchandise bags made of paper or cardboard |
| BMW | 2816178 2-24-2004 | Suits; ties; headwear; wind resistant jackets; mugs; pens (among other goods and services in Classes 1, 2, 3, 4, 5, 6, 8, 9, 11, 12, 14, 18, 20, 22, 24, 27, 28.) |
|  | 5289890 9-19-2017 | Apparatus for recording, transmission and reproduction of data; data processing apparatus; data processors; data processing computers in motor vehicles; computer hardware; central processing units (CPU); computer peripherals; blank USB flash drives; USB cables; USB charging ports for use in |

| Mark | Reg. No. Reg. Date | Goods and Services |
|---|---|---|
| | | vehicles; USB dongles being wireless network adapters for USB multimedia connectivity; audio and video recordings featuring images of or information about vehicles; car navigation computers; software for use in monitoring, operating and control of vehicles; computer software for connecting remotely to computers or computer networks, for the enabling of access or entrance control, for using the internet, for compilation of driver data, for providing electronic software updates; diagnostic vehicle software; computer software, hardware and electric cables for use in diagnosis, repair, and maintenance of vehicles; electronic software and software updates, namely, downloadable computer software and associated data files for installing or updating computer software in the field of vehicles or in the field of vehicle maintenance and repair; database management software in the field of vehicles and vehicle parts; electronic databases in the field of automobiles recorded on computer media; computer software for providing searchable or online databases of information and data in the field of vehicles, aftersales and parts logistics; electronic publications, namely, instruction manuals for vehicles, vehicle servicing recorded on computer media or in downloadable form; electrical cables; Retail store services and online retail store services in the field of motor vehicles, parts and accessories (among other goods and services in Class 9.) |
|  | 1164922 8-11-1981 | Repair and maintenance services for motor vehicles and motor vehicle engines; retail motor vehicle and motor vehicle engine dealership services |

| Mark | Reg. No.<br>Reg. Date | Goods and Services |
|---|---|---|
|  | 1450212<br>8-4-1987 | Clothing; footwear; headgear; all for use in the automotive industry (among other goods and services in Classes 1, 2, 3, 4, 5, 6, 8, 9, 11, 12, 14, 16, 18, 20, 21, 24, 25, 26, 28, 34, 35, 36, 37, 39, and 41.) |
|  | 5333900<br>11-14-17 | Pens, pencils, notepads, notebooks, printed materials, namely manuals, brochures, and catalogs pertaining to the features and controls, operation, maintenance, service and repair, and technical facts and specifications of motor vehicle; paper labels, adhesive labels, and adhesive stickers; boxes, namely, stationery boxes, cardboard boxes and paper boxes (among other goods and services in Classes 6, 7, 11, 12, 16, 27, and 28). |
|  | 4293991,<br>2-26-13 | Automobiles, motorcycles and sports utility vehicles and their parts namely structural parts, engines, wheels, transmissions, windshields, differentials, fenders, drive belts, gears, axles, brakes and braking systems, chassis, badges, bumpers, vehicle seats, trunks, side mirrors, rear view mirrors, steering wheels, shock absorbers, safety belts, rims for vehicle wheels, anti-theft devices for vehicles (among other goods in Class 12). |
|  | 5333899,<br>11-14-17 | Pens, pencils, notepads, notebooks, books in the field of automobiles, posters, calendars, and decals; printed materials, namely manuals, brochures, and catalogs pertaining to the features and controls, operation, maintenance, service and repair, and technical facts and specifications of motor vehicle; paper labels, adhesive labels, and adhesive stickers (among other goods and services in Classes 6, 11, 12, 16, 27, and 28). |

True and correct status copies of these registrations, obtained from the TSDR database of the

United States Patent and Trademark Office, are attached as Exhibit 2.

24.     The federal trademark registrations listed above are prima facie evidence of

BMW's ownership and the validity of those registered trademarks. Further, many of these registrations are incontestable, and thus constitute conclusive evidence of BMW's exclusive right to use those marks for the products and/or services specified in those registrations pursuant to 15 U.S.C. §§ 1065 and 1115(b).

## BMW'S PROPRIETARY DIAGNOSTIC SYSTEMS
## AND ITS DIAGNOSTIC SOFTWARE TRADEMARKS

25.     BMW offers, and has offered for years, proprietary diagnostic systems (comprising hardware and software) for use in maintenance, repair, servicing, and programming of BMW automobiles and motorcycles. BMW's proprietary diagnostic systems are offered only to BMW's authorized dealers and certain other permitted parties, such as independent qualified repair centers that pay for access to BMW's diagnostic software. BMW's diagnostic products include those offered under the BMW Marks and additional marks and names including ISTA, ISTA/D, ISTA/P, RHEINGOLD, ICOM, and EDIABAS (described below), among others.

26.     BMW offers, and has offered for many years, diagnostic software under its ISTA mark and the related marks ISTA/P and ISTA/D, in which the letter P refers to the programming function of ISTA software and the letter D refers to the diagnostic function of ISTA software. BMW's rights in its ISTA marks date back to at least as early as 2008.

27.     In 2009, BMW developed a new version of its ISTA software, in which an "expert mode" with new functions was integrated into the ISTA software. BMW named this expert mode or version of the software RHEINGOLD, and it quickly became known in the field of BMW dealers and technicians servicing BMW cars. As an expert mode, RHEINGOLD software has more functions and capabilities than BMW's ISTA software. The name and mark RHEINGOLD (the "RHEINGOLD Mark") is known to and often used by repairers and

technicians of BMW vehicles synonymously with the name ISTA/D. A screen shot from BMW's

RHEINGOLD software is shown below:



28.      BMW's proprietary RHEINGOLD and ISTA diagnostic products are used for the

maintenance, repair, servicing, and programming of BMW automobiles by authorized BMW

dealers and other permitted parties, such as independent qualified repair centers that pay for

access to BMW's diagnostic software.

29.      BMW's proprietary EDIABAS software is BMW's computer protocol, which is a

tool required to translate commands between BMW diagnostic software programs and the car

being diagnosed. BMW's EDIABAS software is necessary for BMW's ISTA system to operate.

BMW offers, and has offered since as early as 2009, software under its EDIABAS trademark.

30.      BMW offers, and has offered since as early as 2008, cables under its ICOM

trademark that are used in connection with its diagnostic software.

31.     BMW's development of its diagnostic systems for servicing all BMW models, including testing, release, and updating all versions in regular periods, and keeping up with technical and regulatory changes, new parts, new vehicle software, new repair instructions, and new regulations for hundreds of vehicle models in countless languages, was and is a massive undertaking—taking BMW many years and costing BMW many millions of dollars—that currently involves over 400 employees at BMW. Data used in BMW's diagnostic software is the same as data contained in the electronic control units of BMW vehicles when a new model is approved by national regulatory bodies in the markets where the vehicles are released, including the United States. Only BMW—as the manufacturer and the entity that obtains the legal approval for a release of a particular model in any particular market—has this data. It is impossible for anyone other than BMW as the vehicle manufacturer with the technical know-how of the operation and repair of its vehicles to create, maintain, and update such sophisticated diagnostic software for its dealer network encompassing over 3,000 authorized dealers worldwide.

32.     BMW's proprietary rights in its RHEINGOLD, ISTA, and ISTA/P marks (collectively, "BMW's Registered Software Marks"), each of which is federally registered, well predate Defendants' offering of counterfeit RHEINGOLD and ISTA software.

33.     BMW AG owns the following federal registrations for BMW's Registered Software Marks.

| Mark | Reg. No. Reg. Date | Goods and Services |
|---|---|---|
| RHEINGOLD | 5276516 8-29-2017 | Software for the repair, diagnosis, coding and programming of vehicles |

| Mark | Reg. No.<br>Reg. Date | Goods and Services |
|------|-----------------------|--------------------|
| ISTA | 5430672<br>3-27-2018 | Computer software for the repair, maintenance, diagnosis, coding and programming of vehicles; development, implementation, release and updating of computer software for use in vehicle repair and maintenance |
| ISTA/P | 5323883<br>10-31-2017 | Software for the repair, servicing, diagnosis, coding and programming of vehicles; vehicle repair workshop systems consisting of the following components, namely, software, computer hardware, cables and adapters for the repair, servicing, diagnosis, coding and programming of vehicles |

True and correct status copies of these registrations, obtained from the TSDR database of the United States Patent and Trademark Office, are attached as Exhibit 3.

34.     BMW's federal trademark registrations listed above are prima facie evidence of BMW's ownership and the validity of those registered trademarks.

35.     In addition to BMW's Registered Software Marks, BMW also has common-law trademark rights in its ISTA/D, ICOM and EDIABAS marks (collectively, "BMW's Common-Law Marks") (BMW's Registered Software Marks and BMW's Common-Law Marks collectively are "BMW's Software and Hardware Marks").

<b>BMW'S COPYRIGHTED SOFTWARE REGISTRATIONS</b>

36.     BMW's ISTA software is an original work of authorship that constitutes copyrightable subject matter under United States law.

37.     BMW owns all copyright rights in the ISTA software, all preexisting works containing the ISTA software, and all derivative works of the ISTA software.

38.     As a company with its principal place of business in Germany, a signatory of the

Berne Convention, BMW enjoys copyright protection for its copyright-protected works in the

United States without having to register them with the U.S. Copyright Office, so long as the

works comply with the formalities imposed by Germany. Because BMW's ISTA software

complies with the formalities imposed for protection in Germany, BMW enjoys copyright

protection in its ISTA software and all derivative works in the United States.

39.     Moreover, BMW owns U.S. Copyright Reg. No. TX0008580756, which issued

on August 6, 2018, for BMW ISTA 3.38. BMW also owns U.S. Copyright Reg. No.

TX0008451642, which issued on September 20, 2017, for BMW ISTA 4.01. Copies of these

registrations from the Library of Congress' website are attached as Exhibit 4.

40.     BMW's U.S. copyright registrations for its ISTA software listed above are valid

and subsisting. These copyright registrations constitute, in all instances, prima facie evidence of

the validity of the copyrights and the facts stated on the registrations.

## DEFENDANTS' COUNTERFEITING, INFRINGING ACTIVITIES, AND BAD-FAITH ACTS

41.     Defendants registered the domain name RHEINGOLDUSA.COM (the "First

Infringing Domain Name") on June 6, 2015, well after BMW established its rights in the

RHEINGOLD Mark. As detailed below, Defendants used the First Infringing Domain Name for

a website offering unauthorized, counterfeit products under the BMW Marks and BMW's

Software and Hardware Marks (the "First Infringing Website").

42.     Defendants' First Infringing Website falsely claimed that Defendant Rheingold

USA, LLC, a business name containing BMW's RHEINGOLD Mark, was "an automotive

software and hardware development business for BMW Group Motors registered and located in

the USA," as shown in the screen shot below:



43.     Beneath Defendants' false statement about being a "business for BMW Group

Motors," Defendants listed various bullet points advertising software under the names

"Rheingold ISTA/D 4.10," "Rheingold ISTA-P 3.64," and others, which were counterfeits of

BMW's RHEINGOLD and ISTA software.

44.     Defendants' First Infringing Website prominently displayed a shield logo

containing the BMW Marks (the "First Infringing Logo"), as shown in the screen shot below:



45.    Through the First Infringing Website, Defendants offered counterfeit diagnostic software and cables, as well as merchandise including clothing, pens, notebooks, and mugs (collectively, the "First Infringing Products"), all featuring the First Infringing Logo, the BMW Marks and/or BMW's Software and Hardware Marks on the products, on the product packaging, and/or in the product descriptions, as shown in the representative screen shots below:





4840-6153-8705v1






46.     Defendants included screen shots of the software they offered for sale on the First

Infringing Website. An example of a screen shot of the counterfeit RHEINGOLD software

offered on the First Infringing Website—"2018 Rheingold ISTA/D 4.10"—is shown below:



2018 Rheingold ISTA/D 4.10 software + Ediabas 7.3.0 with
iSetup (Download Version).

4840-6153-8705v1

47.     BMW conducted a first test purchase of software on a USB flash drive from the First Infringing Website through an investigative agency. Through the test purchase as well as reviewing the First Infringing Website and Defendants' YouTube videos demonstrating the software they offered, BMW determined that all of the above products in paragraph 45 were counterfeit, that Defendants had also substantially copied BMW's copyright-protected ISTA software, and that Defendants' USB flash drives bearing the BMW Logo, an example of which is shown below, were not genuine BMW products.



48.     The USB flash drive included in the test purchase contained a copy of BMW's copyright-protected ISTA User's Manual for ISTA Version 1.0, with Defendants' First Infringing Logo on the first page and BMW's name and BMW's 2008 copyright notice displayed on every page of the document, as shown in the excerpts below:



49.     The investigative agency later purchased downloadable software labeled "Rheingold ISTA/D 4.10 software + Ediabas 7.3.0 with iSetup" from the First Infringing

Website. BMW confirmed that the following images copied the content of BMW's

RHEINGOLD software, and that the wiring diagrams, text and images seen on these screen shots

are all information and materials created or gathered by BMW and integrated into BMW's

RHEINGOLD software.





50.     In addition to BMW's review of Defendants' counterfeit software obtained

through the second test purchase of downloadable software, the investigative agency also

provided BMW with 54 screen shots from that software, and BMW confirmed that the content of

the screen shots, including the representative screen shot below, were copies of screen displays

for BMW's ISTA 4.10 software:



51.     In addition, BMW confirmed that the second test purchase of downloadable

software included BMW's genuine EDIABAS software, as shown on the screen shot below that

bears BMW's actual copyright notice, "Copyright © 2004-2011 BMW AG":



52.     The second test purchase also included Defendants' sale of BMW's copyright-protected publications, including its ISTA user manual.

53.     Defendants are not and have never been authorized by BMW to offer or sell BMW's RHEINGOLD or ISTA software, any other software or hardware offered by BMW, or related products such as ISTA user manuals. As stated above, BMW's proprietary diagnostic software products, including its RHEINGOLD and ISTA software, are offered only by BMW to BMW's authorized dealers and other permitted parties that pay for such use. Defendants, however, have never been authorized by BMW to offer any of BMW's products.

54.     Defendants admitted in one of their eBay listings for their counterfeit RHEINGOLD and ISTA software (a product named "BMW RHEINGOLD ISTA/D 3.56.30") that it was actually BMW's software by calling it a "mobile software version" of BMW's RHEINGOLD software. When a consumer asked whether Defendants were authorized by BMW

to sell the software, Defendants responded by falsely identifying themselves as an online

distributor and the "only authorized reseller" of BMW's RHEINGOLD software on eBay.

Defendants, however, have never been authorized distributors or resellers of any BMW products.

Screen shots of this exchange are attached as Exhibit 5, which also includes screen shots from

Defendant Issa admitting he used the username at issue in the exchange with the consumer.

55.     Defendants' First Infringing Website caused actual consumer confusion. Attached

as Exhibit 6 is an email exchange between a consumer and BMW's ISTA Support (with the

consumer's name redacted) that shows the consumer believed he had purchased genuine BMW

software from Defendants.

56.     BMW filed a Complaint against Defendant Issa under the Uniform Domain Name

Dispute Resolution Policy ("UDRP") with the World Intellectual Property Organization

("WIPO") Arbitration and Media Center on October 5, 2018, seeking transfer of the First

Infringing Domain Name to BMW. BMW asserted that Issa registered and used the domain

name RHEINGOLDUSA.COM in bad faith and that such use violated BMW's prior trademark

rights in the RHEINGOLD Mark.

57.     A WIPO panel (the "Panel") ruled in favor of BMW and concluded: (1) the First

Infringing Domain Name was identical or confusingly similar to the RHEINGOLD Mark, (2)

Issa had no rights or legitimate interest in the First Infringing Domain Name, and (3) Issa had

registered and was using the First Infringing Domain Name in bad faith. The Panel ordered

transfer of the First Infringing Domain Name to BMW, and BMW took possession of it in

December 2018. A copy of the Panel's decision is attached as Exhibit 7.

58.     In finding for BMW, the Panel rejected Issa's claims that he had valid rights to

the software sold on the First Infringing Website. First, the Panel rejected Issa's claim that he created the software on his own with the assistance of one other programmer and that BMW copied his software. The Panel, citing declarations from two BMW employees (attached as Exhibits 8 and 9), stated that creating and updating the software "is an undertaking that requires the engagement of hundreds of employees," making Issa's explanation "improbable to say the least."

59.     Second, the Panel highlighted factual inconsistencies in Issa's arguments and alleged evidence of prior use. For example, Issa had submitted an email dated June 4, 2010 to support his claim that he allegedly began to create a website using the RHEINGOLD Mark at that time. However, the Panel noted that Issa's email was dated "Thu, June 4, 2010," but that June 4, 2010 was a Friday, not a Thursday. Emails Issa submitted purporting to show sales from eBay had the same veracity problem – they listed May 1, 2011 as a Friday (it was in fact a Sunday), May 30, 2011 as a Saturday (it was a Monday), June 5, 2011 as a Friday (it was a Sunday), and July 3, 2011 as a Friday (it was a Sunday). The Panel specifically rejected the idea that a time zone difference could account for these discrepancies. The Panel noted that the correct day of the week matched the dates of Issa's emails if the corresponding year had been 2015, which was also the year Issa created the First Infringing Domain Name, thus contradicting Issa's claim that he created the software in 2010 or 2011. Like his false claims of being an authorized distributor and seller of BMW products, Issa's email evidence submitted in the UDRP proceeding was no doubt falsified and manufactured to attempt to support his preposterous claims.

60.     In anticipation of losing the UDRP case and ownership of the First Infringing

Domain Name after BMW filed its UDRP Complaint, Defendants privately registered the

domain name RHEINGOLDUSA.NET (the "New Infringing Domain Name") in October 2018

and began using the associated website to offer counterfeit products (the "New Infringing

Website").

61.    Despite BMW's assertion of its rights and its UDRP Complaint, Defendants

advertise and/or offer for sale on the New Infringing Website counterfeit products, namely,

BMW's RHEINGOLD and ISTA software including its EDIABAS software and various

hardware products including, but not limited to, cables and adapters (collectively, the "New

Infringing Products").

62.    The New Infringing Website and the New Infringing Products bear the BMW

Marks, BMW's Software and Hardware Marks, the First Infringing Logo, and/or a blue-and-

white shield logo that substantially replicates the BMW Logo (the "New Infringing Logo"), as

shown in the screen shots below of Defendants' New Infringing Website (Fig. 1), an ICOM

cable (Fig. 2), and RHEINGOLD software and cable kits (Figs. 3, 4, and 5). There are various

other products on RHEINGOLDUSA.NET that are counterfeits and infringe on BMW's

intellectual property rights. Attached as Exhibit 10 are screen shots of the home page and "Store"

page of RHEINGOLDUSA.NET and screen shots of the products Defendants offer for sale on

that website. Also attached in Exhibit 10 are screen shots of Defendants' listing of counterfeit

and infringing products on eBay.



**Fig. 1**



**Fig. 2**

4840-6153-8705v1



**Fig. 3**



**Fig. 4**

4840-6153-8705v1



**Fig. 5**

63. The New Infringing Website also advertises products using photos of the products on top of genuine BMW marketing materials, as shown in the screen shots below, to further the false connection with BMW:

 

64.     BMW conducted a third test purchase of Defendants' products through an investigative agency in March 2019. The investigative agency made two purchases from the New Infringing Website: software titled "2019 Rheingold ISTA/P 3.66 Native (Expert mode) Hardware Version" and a cable titled "Certified ICOM D cable compatible of BMW Brand Motorcycles Diagnostic Service Cable SKU 023."

65.     The products were packed in a cardboard box with tape bearing the RHEINGOLD Mark (Fig. 1). Inside the cardboard shipping box were two identical boxes bearing the New Infringing Logo (Fig. 2), one containing a USB flash drive loaded with the RHEINGOLD software and one containing the ICOM cable. The USB flash drive, which BMW confirmed is not a genuine BMW product, bears the New Infringing Logo (Fig. 3), and a label attached to the cable bears the New Infringing Logo, the RHEINGOLD Mark, and the ICOM mark (Fig. 4). Additionally, the inside of the bottom of the box containing the cable bears a printed label that features the First Infringing Logo (Fig. 5 and magnified portion). Furthermore, an insert in the box with the USB flash drive contained instructions on how to download the software (Fig. 6 and magnified portion). This insert bears the RHEINGOLD Mark, the ISTA/P Mark, the ISTA/D mark, and the New Infringing Logo.



**Fig. 1**



**Fig. 2**



**Fig. 3**



**Fig. 4**

4840-6153-8705v1



**Fig. 5**



**Fig. 6**

66.     As they did on the First Infringing Website, Defendants provide images of the

different versions of RHEINGOLD software they offer for sale on the New Infringing Website.

The software images Defendants posted for the "2019 Rheingold ISTA/P 3.66 Native (Expert

mode)" on the New Infringing Website are identical to both the software images for the

downloadable software from BMW's second test purchase and to the software images

Defendants posted on the First Infringing Website. This confirms the "2019 Rheingold ISTA/P

3.66 Native (Expert mode)" is a version of the same software as the downloadable software from

the second test purchase, which BMW confirmed was counterfeit. Compare the images in

Paragraph 49 to the images below.



2019 Rheingold ISTA/P 3.66 Native (Expert mode) Hardware
Version.



67.     On eBay, Defendants sell counterfeit products under the store name "rheingoldusa," as shown in the February 2019 screen shot below:



68.     Defendants have used social media to promote and sell counterfeit and infringing

products. Defendants' social media pages have included a Facebook page at

https://www.facebook.com/RheingoldBMW that used the account names "RheingoldBMW" and

"Rheingoldusa.com," on which Defendants falsely claimed to be the "only US registered seller"

of RHEINGOLD software for BMW vehicles, as shown in the screen shot below, which also

includes photos of Defendants' counterfeit BMW USB flash drives atop BMW's genuine

marketing materials.

4840-6153-8705v1



69.    In January 2019, Defendants posted on another social media account, their "BMWGroupCertified" Facebook page, the first graphic shown below, which displays the BMW Marks, the RHEINGOLD Mark, the ISTA Mark (as ISTA/D and ISTA/P), and the New Infringing Logo, as well as other trademarks owned by BMW and related companies, namely, MINI, BMW Motorrad, and Rolls-Royce. The second photo shown below is an official BMW photo from one of BMW's official websites, https://www.bmwgroup.com/en/careers.html. It is clear from even a cursory review of the two images that Defendants copied the bottom portion of BMW's photo displaying BMW, Rolls-Royce, and MINI vehicles and replaced the top part of the photo with the famous BMW Marks, Rolls-Royce logo, MINI logo, BMW's Motorrad mark, the ISTA/P Mark, ISTA/D mark, the RHEINGOLD Mark, and Defendants' New Infringing Logo.





70.     Defendants' social media accounts that use BMW's trademarks also include: (a) a

Facebook page that used the account name "Rheingold USA LLC," (b) a Facebook page that

used the account names "Rheingoldusa" and "Rheingold ista," (c) a Twitter account that uses the

name "Rheingoldus," and (d) two YouTube accounts that use or used the name

"RheingoldUSA." BMW submitted takedown complaints to Facebook, Twitter, and YouTube.

After certain of Defendants' accounts were removed, Defendants simply created new accounts

also using BMW's trademarks and the corresponding social media pages were used to carry out Defendants' counterfeiting and infringing activities using BMW's trademarks and software.

71.     For example, BMW submitted takedown complaints to Facebook for three of Defendants' pages, namely, the pages that used the account names "Rheingoldusa.com (BMW Groups)," "Rheingold USA LLC," and "Rheingoldusa." Shortly after Facebook responded by removing those pages, Defendants created a new Facebook page using the name "Rheingold USA."

72.     Similarly, after BMW filed a takedown complaint in 2018, YouTube removed Defendants' account that used the name "Rheingold USA." However, Defendants later posted videos on a different YouTube account with the same name, "Rheingold USA," including three videos posted in 2019 that demonstrate the Defendants' counterfeit RHEINGOLD and ISTA software.

73.     Defendants use PayPal accounts for payment transactions for their counterfeit products. These accounts use or have used the names "RheingoldUSA.com" and "RheingoldUSA.com store" and have displayed the RHEINGOLD Mark and First Infringing Logo.

74.     BMW filed a complaint with PayPal regarding Defendants' PayPal account name of "RheingoldUSA.com" and use of PayPal's merchant services to process payments for counterfeit products on the First Infringing Website and on Defendants' PayPal page at paypay.me/rheingoldusa. PayPal responded to BMW's complaint by stating that its services were no longer available on the First Infringing Website. However, it was unclear what action, if any, that PayPal had taken regarding Defendants' account. In any event, Defendants then began using

a second PayPal account with the name "RheingoldUSA.com store" on the First Infringing Website, and later changed the account name to "Rheingold USA store" and started using it on the New Infringing Website. In addition, Defendants' first PayPal account that uses the First Infringing Logo is still active. A February 25, 2019 screen shot is shown below:



75.     Defendants' activities described above are a cat-and-mouse game commonly practiced by counterfeiters that target famous brands. Counterfeiters such as Defendants often simply move their counterfeiting activities to new websites, new social media pages, and new online accounts upon receiving notice of a lawsuit or other objection from trademark owners. Additionally, courts have recognized that counterfeiters such as Defendants also frequently operate multiple payment accounts and can quickly move funds to off-shore bank accounts outside the jurisdiction of U.S. courts.

76.     Counterfeiters such as Defendants damage the trademark owner and the economy at large. According to a Homeland Security report, the U.S. government seized over $1.2 billion

worth of counterfeit goods in 2017.[1]

77.     Despite BMW's enforcement efforts, Defendants have persisted in counterfeiting and infringing BMW's trademarks and infringing BMW's copyright-protected software by creating the New Infringing Website and continuing to sell counterfeit and infringing products. BMW thus has reason to believe that if it files another UDRP complaint, sends Defendants a demand letter, or takes down another social media page or payment account, Defendants will merely change the name of the New Infringing Website, change their payment and social media accounts, and continue to sell the First Infringing Products and the New Infringing Products (collectively, the "Infringing Products").

## FIRST CLAIM FOR RELIEF
### Trademark Counterfeiting Under Section 32(1)
### of the Lanham Act, 15 U.S.C. § 1114(1)

78.     BMW repeats and realleges each and every allegation set forth above.

79.     BMW AG owns a number of federal trademark registrations for the BMW Marks and BMW's Registered Software Marks for various goods and services, including automobile parts and software for the repair, diagnosis, coding and programming of vehicles.

80.     Without BMW's authorization, Defendants intentionally used in commerce the BMW Marks, BMW's Registered Software Marks, and/or substantially indistinguishable variations or counterfeits thereof, as defined under 15 U.S.C. § 1116(d)(1)(B)(i), in connection with the sale, offering for sale, and/or distribution of (a) software, cables, jackets, mugs, pens, notebooks, USB flash drives, and user manuals bearing the BMW Word Mark, (b) software,

---

[1] Homeland Security, "Intellectual Property Rights Seizure Statistics: Fiscal Year 2017," https://www.cbp.gov/sites/default/files/assets/documents/2018-Apr/ipr-seizure-stats-fy2017.pdf.

4840-6153-8705v1

cables, jackets, mugs, pens, notebooks, USB flash drives, and user manuals bearing the BMW Logo, (c) software bearing the RHEINGOLD Mark, (d) software bearing the ISTA Mark, and (e) software bearing the ISTA/P mark.

81.     Without BMW's authorization, Defendants reproduced, counterfeited, copied, and/or colorably imitated the BMW Marks and BMW's Registered Software Marks and applied such reproductions, counterfeits, copies, and/or colorable imitations to labels, signs, prints, packages, wrappers, receptacles and/or advertisements, as defined under 15 U.S.C. § 1116(d)(1)(B)(ii), intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of the Infringing Products in a manner likely to cause confusion, or to cause mistake, or to deceive.

82.     Defendants' actions described above are likely to cause confusion or mistake, or to deceive as to the origin, sponsorship, or approval of the Infringing Products, Defendants' services, and commercial activities, and thus constitute counterfeiting of BMW's federally registered BMW Marks and BMW's Registered Software Marks identified above in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

83.     Defendants' actions described above have at all times relevant to this action been willful and/or knowing.

84.     As a direct and proximate result of Defendants' actions as alleged above, BMW has been and will continue to be damaged and irreparably harmed.

85.     BMW has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### Trademark Infringement Under Section 32(1)
### of the Lanham Act, 15 U.S.C. § 1114(1)

86.     BMW repeats and realleges each and every allegation set forth above.

87.     Defendants used and continue to use in commerce the BMW Marks, BMW's

Registered Software Marks, and reproductions, copies, and colorable imitations thereof in

connection with the offering, sale, distribution, and advertising of goods and services covered by

registrations for such works, which are likely to cause confusion, mistake, or deception as to the

origin, sponsorship, or approval of the Infringing Products, Defendants' services, and

Defendants' commercial activities, and thus constitute infringement of the BMW Marks and

BMW's Registered Software Marks referred to above in violation of Section 32 of the Lanham

Act, 15 U.S.C. § 1114.

88.     Defendants' actions described above have at all times relevant to this action been

willful and/or knowing.

89.     As a direct and proximate result of Defendants' actions as alleged above, BMW

has been and will continue to be damaged and irreparably harmed.

90.     BMW has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
### Trademark Infringement, False Designation
### of Origin, and Unfair Competition
### Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)

91.     BMW repeats and realleges each and every allegation set forth above.

92.     Defendants' actions described above are likely to cause confusion, mistake, or

deception as to the origin, sponsorship, or approval of the Infringing Products and Defendants'

commercial activities, and thus constitute trademark infringement, false designation of origin,

and unfair competition with respect to the BMW Marks and BMW's Software and Hardware Marks in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

93.     Defendants' actions described above have at all times relevant to this action been willful.

94.     As a direct and proximate result of Defendants' actions as alleged above, BMW has been and will continue to be damaged and irreparably harmed.

95.     BMW has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF
### Trademark Dilution Under Section
### 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)

96.     BMW repeats and realleges each and every allegation set forth above.

97.     BMW has engaged in extensive nationwide advertising, promotion, and use of the BMW Marks for many years. Further, BMW has had massive sales of goods and services bearing such marks for decades.

98.     The BMW Marks have for many years received extensive unsolicited media attention nationwide. Such extensive and frequent media attention and commercial success has had a substantial impact on the public and has long created an association in the minds of consumers between BMW and the BMW Marks, such that these marks are famous and were famous nationwide well before Defendants commenced their unauthorized use of those marks.

99.     Defendants' actions described above, all occurring after the BMW Marks became famous, are likely to cause dilution by blurring and dilution by tarnishment of the distinctive quality of those trademarks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

100.    Defendants' actions described above have at all times relevant to this action been willful.

101.    As a direct and proximate result of Defendants' actions as alleged above, BMW has been and will continue to be damaged and irreparably harmed.

102.    BMW has no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
### Copyright Infringement
### <u>17 U.S.C. § 101, et seq.</u>

103.    BMW repeats and realleges each and every allegation set forth above.

104.    BMW's ISTA software is a wholly original work of authorship and constitutes copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*

105.    BMW has complied in all respects with formalities imposed by Germany for copyright protection of BMW's ISTA software. Because Germany and the United States are both signatories to the Berne Convention, BMW enjoys copyright protection of its ISTA software in the United States. See Berne Convention for the Protection of Literary and Artistic Works (as amended on September 28, 1979).

106.    BMW is the sole owner of all right, title, and interest in and to the copyrights in the ISTA software.

107.    In addition, BMW has obtained copyright registrations for its ISTA software, namely, Registration No. TX0008580756 for BMW ISTA 3.38 and Registration No. TX0008451642 for BMW ISTA 4.01. These Certificates of Registration constitute prima facie evidence of the validity of BMW's copyright rights and the facts stated in the Certificates.

108.    BMW has never licensed, or in any other way authorized, Defendants to reproduce, cause to reproduce, prepare derivative works from, distribute, or display any portion of the ISTA software, which are the exclusive rights of BMW as the copyright owner.

109.    By the actions described above, Defendants have infringed and will continue to infringe BMW's copyright rights in the ISTA software in violation of the Copyright Act, 17 U.S.C. § 101, *et seq.*

110.    Defendants' actions described above have at all times relevant to this action been willful.

111.    As a direct and proximate result of Defendants' actions as alleged above, BMW has been and will continue to be damaged and irreparably harmed.

112.    BMW has no adequate remedy at law.

### SIXTH CLAIM FOR RELIEF
### Cybersquatting Under Section
### 43(d) of the Lanham Act, 15 U.S.C. § 1125(d)

113.    BMW repeats and realleges each and every allegation set forth above.

114.    Defendants caused to be registered, registered, and used the First Infringing Domain Name, RHEINGOLDUSA.COM, and the New Infringing Domain Name, RHEINGOLDUSA.NET (collectively, the "Infringing Domain Names"), with a bad-faith intent to profit from BMW's RHEINGOLD Mark.

115.    Defendants and/or others acting on Defendants' behalf are or were the registrants or the registrants' authorized licensee or user of the Infringing Domain Names.

116.    The Infringing Domain Names are identical or confusingly similar to BMW's RHEINGOLD Mark.

117.    The RHEINGOLD Mark was distinctive at the time Defendants registered and used the Infringing Domain Names.

118.    The Infringing Domain Names do not consist of Defendants' prior non-infringing legal name, or a prior non-infringing name that is otherwise commonly used to identify Defendants.

119.    Defendants have not made any prior use of the Infringing Domain Names in connection with the bona fide offering of any goods or services.

120.    Defendants' registration and use of the Infringing Domain Names constitutes cybersquatting in violation of 15 U.S.C. § 1125(d).

121.    Defendants have unfairly profited from the infringing actions alleged above, and their actions at all times have been willful and deliberate in disregard of BMW's trademark rights.

122.    As a direct and proximate result of Defendants' actions as alleged above, BMW has been and will continue to be damaged and irreparably harmed.

123.    BMW has no adequate remedy at law.

**SEVENTH CLAIM FOR RELIEF**
**Trademark Infringement**
**Under Utah Code § 70-3a-402**

124.    BMW repeats and realleges each and every allegation set forth above.

125.    Defendants' actions and/or the actions of others acting on behalf of or with Defendants' authorization or knowledge making use of the BMW Marks and BMW's Software and Hardware Marks with intent to deceive as to the affiliation, connection, or association of Defendants with BMW in the conduct of their business without the authorization of BMW as set

forth above constitutes statutory trademark infringement of the BMW Marks and BMW's

Software and Hardware Marks identified above in violation of Utah Code § 70-3a-402.

126.     Defendants' actions and/or the actions of others acting on their behalf or with

their authorization or knowledge described above have at all times relevant to this action been

willful.

127.     As a direct and proximate result of Defendants' actions as alleged above, BMW

has been and will continue to be damaged and irreparably harmed.

128.     BMW has no adequate remedy at law.

### EIGHTH CLAIM FOR RELIEF
### Common Law Trademark Infringement, Unfair
### Competition, and Misappropriation

129.     BMW repeats and realleges each and every allegation set forth above.

130.     Defendants' actions described above with respect to the BMW Marks and

BMW's Software and Hardware Marks constitute common law trademark infringement, unfair

competition, and misappropriation of BMW's goodwill under the common law.

131.     Defendants' actions described above have at all times relevant to this action been

willful.

132.     As a direct and proximate result of Defendants' actions as alleged above, BMW

has been and will continue to be damaged and irreparably harmed.

133.     BMW has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, BMW requests entry of judgment against Defendants as follows:

A.      Entry of an Order that Defendants, their affiliates, officers, agents, servants, employees, attorneys, and all persons and entities acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

1.      using the BMW Marks, BMW's Software and Hardware Marks, or other trademarks owned by BMW and related companies, including MINI, the logo , ROLLS-ROYCE, the logo , BMW MOTORRAD, or any reproductions, counterfeit copies or colorable imitations thereof, including the First Infringing Logo and the New Infringing Logo, in connection with the manufacturing, marketing, advertising, offering for sale, selling, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of any products not made by or authorized by BMW including, but not limited to, the Infringing Products;

2.      passing off, inducing, or enabling others to sell or pass off any product as BMW products that are not BMW products, not produced under the authorization, control, or supervision of BMW, and not approved by BMW for sale under the BMW Marks or BMW's Software and Hardware Marks;

3.      representing that Defendants are resellers, distributors, software developers for, or business partners of BMW or any of BMW's affiliated companies, or that Defendants are otherwise affiliated with, endorsed by, or sponsored by BMW or any of BMW's affiliated companies;

4.      using the domain name RHEINGOLDUSA.NET and using, registering, acquiring, establishing, and creating any other domain names, associated email addresses, and URLs that are comprised of or contain any of the BMW Marks and/or any of BMW's Software and Hardware Marks;

5.      using, registering, acquiring, establishing, and creating any social media pages and accounts that are comprised of or contain any of the BMW Marks and/or any of BMW's Software and Hardware Marks including, but not limited to, Defendants' "Rheingold USA LLC," "Rheingoldusa" "Rheingold ista," and "BMWGroupCertified" Facebook pages; Defendants' "Rheingoldus" Twitter account; and Defendants' "RheingoldUSA" YouTube account;

6.      using, registering, acquiring, establishing, and creating any online store names and accounts that are comprised of or contain any of the BMW Marks and/or any of BMW's Software and Hardware Marks including, but not limited to, Defendants' "rheingoldusa" eBay store and account;

7.      using, registering, acquiring, establishing, and creating any payment accounts that are comprised of or contain any of the BMW Marks and/or any of BMW's Software and Hardware Marks including, but not limited to, Defendants' PayPal accounts using the names "RheingoldUSA.com" and "RheingoldUSA.com store";

8.      using, reproducing, preparing derivative works of, or distributing BMW's copyrighted works or substantially similar works in any form or medium; and

9.      assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs A.1-8 above;

B.      Entry of an Order that those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay and Amazon; any website hosting providers and Internet service providers ("ISPs"); any social media platforms such as Facebook, Twitter, and YouTube; any advertising providers/vendors such as Facebook and Google; any financial-service providers, including credit card processing vendors such as PayPal, banks, and merchant account providers; any Internet search engines providing keyword-triggered advertising and other types of online advertising such as Google and Bing (collectively, the "Third-Party Providers") shall:

1.      terminate all of the ISP and hosting services for websites in violation of any of Paragraphs A.1-9 above and to take down and shut down all such websites, including, but not limited to, RHEINGOLDUSA.NET;

2.      disable and cease providing services used by Defendants, currently and in the future, to engage in the advertisement and/or sale of products using any of the BMW Marks or BMW's Software and Hardware Marks or any variation thereof or BMW's software or any portion thereof, and immediately cancel such accounts and remove all associated web pages, including, but not limited to, all social media accounts (e.g., Defendants' Facebook pages, including their "Rheingold USA" "and "BMWGroupCertified" accounts; Defendants' Twitter pages, including the "Rheingoldus" account; and Defendants' YouTube accounts,

including their "RheingoldUSA" account; as well as all online stores, including

Defendants' eBay account "rheingoldusa");

2.      cancel and permanently block any advertisements used by or associated

with Defendants in connection with the sale of counterfeit and infringing products

using the BMW Marks, BMW's Software and Hardware Marks, or variations

thereof, or BMW's software or any portion thereof; and

3.      freeze the assets of Defendants' payment and marketplace accounts over

which the Third-Party Providers have control including, but not limited to,

Defendants' PayPal accounts using the names "RheingoldUSA.com" and

"RheingoldUSA.com store";

C.      Entry of an Order directing the Secretary of State offices and any other state and

local agencies and authorities with which Defendants have registered, filed, or recorded any

corporate names, business names, trade names, assumed names, and fictitious names that violate

any of Paragraphs A.1-9 above (including without limitation the names "Rheingold USA LLC"

and "Rheingold USA Inc.") to immediately and permanently cancel, revoke, or remove such

registrations and filings as applicable;

D.      Entry of an Order directing Defendants to file with this Court and serve on

BMW's attorneys, thirty (30) days after the date of entry of any injunction, a report in writing

and under oath setting forth in detail the manner and form in which they have complied with the

injunction and other orders issued by the Court;

E.      Entry of an Order requiring Defendants to pay statutory damages in accordance

with 15 U.S.C. § 1117(c) of $2,000,000 per mark per type of service sold, offered for sale, or

distributed by Defendants bearing marks deemed to be counterfeits of the BMW Marks or BMW's Software and Hardware Marks;

F.     Entry of an Order requiring Defendants to account for and pay to BMW any and all profits arising from the foregoing acts of counterfeiting, infringement, dilution, cybersquatting, false designation of origin, and unfair competition, and an increasing of such profits for payment to BMW in accordance with 15 U.S.C. § 1117, and other applicable statutes and laws;

G.     Entry of an Order requiring Defendants to pay BMW statutory damages under 15 U.S.C. § 1117(d) in an amount of $100,000 for each domain name found to constitute cybersquatting;

H.     Entry of an Order requiring Defendants to pay BMW Defendants' profits and BMW's actual damages in accordance with 17 U.S.C. § 504 for each infringement of BMW's ISTA software;

I.     Entry of an Order requiring Defendants to pay statutory damages, as applicable, in accordance with 17 U.S.C. § 504 in an amount of $150,000 per work deemed to be willfully infringed;

J.     Entry of an Order requiring Defendants to pay BMW punitive damages in an amount as yet undetermined caused by the foregoing acts of Defendants;

K.     Entry of an Order requiring Defendants to pay BMW's costs and attorney's fees in this action pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 505, and other applicable statutes and laws; and

L.      Any and all other relief that this Court deems just and proper.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, BMW respectfully demands a trial by jury for all claims

so triable.

Respectfully submitted,

Dated this 2nd day of April, 2019          **KELLY IP, LLP**

By:  _____*s/* Sara Copeland Parker_____

*Attorneys for Plaintiffs*
*BMW of North America, LLC and Bayerische*
*Motoren Werke AG*

## VERIFICATION OF COMPLAINT

Aimee Gessner, under penalty of perjury of the laws of the United States, declares:

That she is employed by BMW as Senior Legal Counsel for Trademarks, Designs and Legal Issues relating to Intellectual Property Law, that she has read, is familiar with, and has personal knowledge of the contents of the foregoing Verified Complaint; and that the allegations thereof are true and correct or, to the extent that matters are not within her personal knowledge, that the facts stated therein have been assembled by authorized personnel, including counsel, and that she is informed that the facts stated therein are true and correct.

Executed on March 27th, 2019

_____
Aimee Gessner

52

**EXHIBIT INDEX**

Exhibit 1 — Brand rankings

Exhibit 2 — Registrations of the BMW Marks, obtained from the TSDR database of the United States Patent and Trademark Office

Exhibit 3 — Registrations of BMW's Registered Software Marks, obtained from the TSDR database of the United States Patent and Trademark Office

Exhibit 4 — Copies of BMW's ISTA software copyright registrations from the Library of Congress' website

Exhibit 5 — Screen shots of exchange between consumer and Defendants on eBay

Exhibit 6 — Email exchange between consumer and BMW's ISTA Support Department

Exhibit 7 — WIPO Panel's decision on BMW's UDRP Complaint against RHEINGOLDUSA.COM

Exhibit 8 — Declaration of Marc Torlo from the UDRP proceeding

Exhibit 9 — Declaration of Florian Annetzberger from the UDRP proceeding

Exhibit 10 — Printouts from RHEINGOLDUSA.NET and eBay showing Defendants' product listings