IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BMW OF NORTH AMERICA, LLC and BAYERISCHE MOTOREN WERKE AG,<br><br>Plaintiffs,<br><br>vs.<br><br>AMMAR ISSA, RHEINGOLD USA, LLC, and RHEINGOLD USA, INC.,<br><br>Defendants. | **ORDER GRANTING IN PART TEMPORARY RESTRAINING ORDER**<br><br>Case No. 2:19-cv-220<br><br>District Judge Jill Parrish |

Before the court is Plaintiffs' BMW of North America, LLC and Bayerische Motoren Werke AG (collectively "BMW") Motion for Ex Parte Temporary Restraining Order, Asset Freeze, Expedited Discovery, and, Upon Expiration of the Temporary Restraining Order, a Preliminary Injunction ("Motion") against Ammar Issa, Rheingold USA, LLC, and Rheingold USA, Inc. (collectively "Defendants"). The court has considered the motion and now GRANTS the motion in part, granting a temporary restraining order, asset freeze, and expedited discovery, and setting a hearing on the motion for preliminary injunction.

## I. FINDINGS OF FACT

After review of the evidence, the court finds that BMW has alleged specific facts by affidavit and verified complaint that "clearly show that immediate and irreparable injury, loss, or damage will result" to BMW before Defendants "can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Subject to reassessment at the preliminary injunction stage, the court concludes that the following facts support the requested temporary restraining order, asset freeze, and expedited discovery:

    1.    BMW is a world-famous manufacturer of automobiles and motorcycles, with over

340 authorized BMW dealers in the United States.

2. BMW owns the famous and federally registered trademark BMW and the BMW trade name (collectively, the "BMW Word Mark").

3. BMW also owns its famous and federally registered BMW logo shown below (the "BMW Logo") (collectively, the BMW Word Mark and BMW Logo are the "BMW Marks"):



4. Under the BMW Marks, BMW manufactures, sells, and distributes an array of automobiles and motorcycles and associated software, parts, and accessories, and provides numerous services, such as maintenance and repair services, financing, leasing, insurance, and warranty services. BMW also sells a wide variety of merchandise bearing the BMW Marks, including apparel, mugs, and writing instruments. BMW has manufactured, marketed, and sold millions of vehicles in the United States under the BMW Marks.

5. BMW has for decades utilized a network of authorized dealers in the United States to market both new and certified pre-owned BMW vehicles, vehicle parts and accessories, other products including software, hardware, and apparel, and services such as rental, financing, and maintenance services.

6. BMW has had sustained commercial success in the United States for decades and spends substantial sums every year in the United States to extensively advertise, market, and promote its products and services.

7. BMW has used the BMW mark alone and combined with geographic and descriptive terms for websites dedicated to promoting and offering for sale its products and services (e.g., BMWUSA.com), and has allowed its authorized dealers to do the same.

8. BMW owns federal trademark registrations for its trademarks identifying diagnostic software and hardware used for maintenance, repair, servicing, and programming of BMW vehicles.

9. These registered marks include ISTA and ISTA/P for BMW's proprietary diagnostic software, and RHEINGOLD (the "RHEINGOLD Mark"), the expert mode of ISTA software (collectively, "BMW's Registered Software Marks").

10. BMW also owns common-law rights in the marks ISTA/D and EDIABAS for diagnostic software and ICOM for cables used with its ISTA software (collectively, "BMW's Common-Law Marks") (BMW's Registered Software Marks and BMW's Common-Law Marks collectively are "BMW's Software and Hardware Marks").

11. Additionally, BMW owns valid copyright registrations for two versions of its ISTA software.

12. Defendant Ammar Issa ("Issa") is a resident of Lehi, Utah. Issa is the registered agent and sole member of Defendant Rheingold USA, LLC, a Utah limited liability company with its principal place of business in Lehi, Utah. Issa is also the registered agent for Defendant Rheingold USA, Inc., a Utah corporation with its principal place of business in Lehi, Utah. Issa is the owner of the privately registered domain name RHEINGOLDUSA.NET and the former owner of REHINGOLDUSA.COM.

13. Defendants are not authorized BMW dealers, licensees, or otherwise authorized to use BMW's trademarks.

14. Defendants have infringed all the above trademarks, counterfeited the federally registered trademarks, and infringed the copyrights.

15. For example, Defendants used the website RHEINGOLDUSA.COM to sell

3

counterfeit products under the BMW Marks and BMW's Registered Software Marks.

16. On the website RHEINGOLDUSA.COM, Defendants falsely claimed that their company Rheingold USA, LLC was "an automotive software and hardware development business for BMW Group Motors registered and located in the USA," as shown in the screenshot below:



17. Defendants offered for sale and sold on the RHEINGOLDUSA.COM site versions of ISTA, ISTA/P, ISTA/D, RHEINGOLD, and EDIABAS software, ICOM cables, and other products such as jackets, mugs, and pens bearing the BMW Marks.

18. Many of Defendants' products bore the infringing logo shown below (the "First Infringing Logo") that contained the BMW Marks.



19. BMW's test purchase from RHEINGOLDUSA.COM confirmed that the products, including the USB flash drive bearing the BMW Marks shown below, were counterfeit and Defendants had substantially copied BMW's copyright-protected ISTA software.

20. The flash drive purchased from Defendants also contained a copy of BMW's ISTA User's Manual for ISTA Version 1.0 from 2008, which bears BMW's name and copyright notice displayed on every page, and the First Infringing Logo on the first page.

21. The use of the BMW mark furthers the false impression that Defendants are a software development partner of BMW.

22. Defendants sold the same counterfeit and infringing goods on eBay.

23. In one transaction on Defendants' eBay store, a consumer asked whether Defendants were authorized by BMW to sell RHEINGOLD software, and Defendants responded by falsely claiming to be the "only authorized reseller" of such software.

24. BMW's ISTA Support received an email from a consumer who believed he had purchased genuine BMW software from Defendants.

25. Thus, Defendants' conduct creates actual confusion among consumers.

26. After confirming Defendants were using the BMW Marks and BMW's Software and Hardware Marks to sell counterfeit products, BMW filed a complaint against Defendant Issa on October 5, 2018 with the World Intellectual Property Organization's Arbitration and Mediation Center under the Uniform Domain Name Dispute Resolution Policy ("UDRP").

27. The UDRP Panel (the "Panel") issued a ruling in BMW's favor, concluding that RHEINGOLDUSA.COM was identical or confusingly similar to BMW's RHEINGOLD Mark, Issa had no rights or legitimate interest in RHEINGOLDUSA.COM, and Issa had registered and used the domain name in bad faith.

28. The Panel ordered transfer of the domain name to BMW.

29. But, shortly before the Panel issued its order, Defendants registered a new, virtually identical infringing domain name, RHEINGOLDUSA.NET—the only difference being the

substitution of .NET for .COM—and began using the new website to offer counterfeit products after the adverse UDRP decision.

30. Like the counterfeit products offered on RHEINGOLDUSA.COM, these products bore BMW Marks, BMW's Software and Hardware Marks, the First Infringing Logo, and/or a new infringing blue-and-white shield logo mimicking the famous BMW Logo (the "New Infringing Logo"), shown below.



31. In March 2019, BMW conducted a test purchase of software and a cable from RHEINGOLDUSA.NET and confirmed the products were counterfeit.

32. The products and their packaging bore the BMW Marks, BMW's Software and Hardware Marks, the First Infringing Logo, and the New Infringing Logo, as shown in examples below.

  



6

33. Defendants also continue to promote and sell counterfeit and infringing products via eBay and social media pages, including Facebook, Twitter, and YouTube, using account names that infringe the BMW word mark or the RHEINGOLD Mark.

34. Defendants also use genuine BMW promotional materials to advertise their counterfeit products, furthering their fraudulent scheme of passing themselves off as BMW's official U.S. reseller or software development partner.

35. For example, Defendants posted on one of their Facebook pages the first graphic shown below, which copies an official BMW photo shown in the second graphic below. Defendants altered the top half of the genuine BMW photo to add Defendants' New Infringing Logo above and next to the BMW Marks, the RHEINGOLD Mark, the ISTA mark, and the New Infringing Logo, as well as the MINI, BMW Motorrad, and Rolls-Royce trademarks owned by BMW and related companies.





36. BMW has submitted takedown complaints to Facebook, Twitter, and YouTube, objecting to Defendants' social media pages.

37. After each successful takedown, however, Defendants simply created new accounts under similar infringing names and used them to continue to promote and sell counterfeit and infringing goods.

38. BMW also submitted a complaint to PayPal regarding Defendants' PayPal account name "RheingoldUSA.com" and use of PayPal's merchant services to process payments for counterfeit products. PayPal stated that its services were no longer available on RHEINGOLDUSA.COM, but Defendants continue to use the "RheingoldUSA.com" account and a second PayPal account name, "RheingoldUSA.com store."

39. Defendants' actions are part of a massive counterfeiting problem that harms trademark owners, consumers, and the economy at large.

40. Because Defendants have dodged BMW's past enforcement efforts, the court finds that additional UDRP complaints and takedown requests would serve only to give Defendants the opportunity to register new domain names and tweak account names, transfer the proceeds from the sale of the counterfeit goods to new accounts, and skirt valid enforcement efforts, giving Defendants continued opportunity to profit from BMW's trademarks and copyrights.

## II. DISCUSSION

### A. The Court has Jurisdiction

This action arises under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, Utah state law and common law. The court has jurisdiction over the

subject matter of this action pursuant to 15 U.S.C. § 1121[1] and 28 U.S.C. §§ 1331 and 1338.[2] Jurisdiction over the state law claims is authorized under 28 U.S.C. § 1367(a). The court has personal jurisdiction over Defendants as all three are citizens of Utah.

### B. BMW is Entitled to an Ex Parte TRO

BMW moves the court to issue a Temporary Restraining Order ("TRO") without notice to Defendants. The standard for a TRO is the same as for a preliminary injunction. The plaintiff must establish: "(1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Beltronics USA, Inc. v. Midwest Inventory Dist., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009). However, to issue a TRO without notice, Plaintiffs must establish through "specific facts in an affidavit or a verified complaint" that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney [must] certify[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

The Court concludes that BMW is entitled to an ex parte TRO and makes the following legal conclusions:

---

[1] 15 U.S.C. § 1121 states that: "[t]he district and territorial courts of the United States shall have original jurisdiction . . . of all actions arising under [the Lanham Act], without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."

[2] 28 U.S.C. § 1338 states "(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. . . . (b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws."

**1.**     *Legal Conclusions in Support of TRO*

a)     Plaintiffs are substantially likely to succeed in establishing that Defendants' use of the marks BMW, the BMW Logo, RHEINGOLD, ISTA, and ISTA/P constitutes trademark counterfeiting in violation of Section 32(1) of the Lanham Act (Count One of the Complaint).

b)     Plaintiffs are substantially likely to succeed in establishing that Defendants' use of the marks BMW, the BMW Logo, RHEINGOLD, ISTA, and ISTA/P constitutes trademark infringement in violation of Section 32(1) of the Lanham Act (Count Two of the Complaint).

c)     Plaintiffs are substantially likely to succeed in establishing that Defendants' use of the marks BMW, the BMW Logo, RHEINGOLD, RHEINGOLD, ISTA, ISTA/P, ISTA/D, ICOM, and EDIABAS constitutes trademark infringement, false designation of origin, and unfair competition in violation of Section 43(a) of the Lanham Act (Count Three of the Complaint), trademark infringement in violation of Utah Code § 70-3a-402 (Count Seven of the Complaint), and common-law trademark infringement, unfair competition, and misappropriation (Count Eight of the Complaint).

d)     Plaintiffs are substantially likely to succeed in establishing that Defendants' use of the marks BMW and the BMW Logo constitutes dilution by blurring and dilution by tarnishment in violation of Section 43(c) of the Lanham Act (Count Four of the Complaint).

e)     Plaintiffs are substantially likely to succeed in establishing that Defendants' display, sale, and distribution of BMW's ISTA software constitute copyright infringement in violation of 17 U.S.C. § 101, *et seq* (Count Five of the Complaint).

f)     Plaintiffs are substantially likely to succeed in establishing that Defendants' registration and use of the domain names RHEINGOLDUSA.COM and RHEINGOLDUSA.NET constitute cybersquatting in violation of Section 43(d) of the Lanham Act (Count Six of the Complaint).

**g)** Plaintiffs will suffer irreparable harm from Defendants' unlawful activities if a TRO is not granted. A TRO is appropriate where a trademark holder has shown irreparable harm through diminishment of its goodwill, dilution of its marks, and/or loss of control over the quality of products bearing the marks. *MonaVie, LLC v. What Lit Loh*, 2011 WL 1233274 at *3 (D. Utah March 31, 2011) (unpublished).

**h)** The balance of harms weighs heavily in BMW's favor. Any harm to Defendants would necessarily arise from the loss of their business, but it is well settled that "a defendant cannot avoid a preliminary injunction by claiming harm to a business built upon . . . infringement." *See Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1229 (10th Cir. 2007); see also *ICON Health & Fitness, Inc. v. Med. Prods.*, No. 1:10-CV-00207-DN, 2012 WL 3962737, at *5 (D. Utah Sept. 11, 2012) (unpublished) ("Once intentional infringement has been found in a trademark case, the harm which the issuance of a preliminary injunction would cause the trademark violator warrants little consideration.") (internal citation omitted).

**i)** BMW's proposed injunction would benefit the public interest by furthering the Lanham Act's purpose of "protect[ing] the public so it may be confident that, in purchasing a product bearing a particular trade-mark which it favorably knows, it will get the product which it asks for and wants to get." *Beltronics USA, Inc. v. Midwest Inventory Distrib.*, 562 F.3d 1067, 1072 n.3 (10th Cir. 2009) (quoting S.Rep. No. 1333, 79th Cong., 2d Sess., 3 (1946)). Additionally, "protecting the rights of the owner of protected trademarks and trade dress is consistent with the public interest because trademarks foster competition and promote the maintenance of quality in business." *Huish Detergents, Inc. v. Orange Glo Int't, Inc.*, No. 202CV1031TC, 2002 WL 32157171, at *12 (D. Utah, Nov. 6, 2002) (unpublished). The TRO would help eliminate the confusion caused by Defendants infringing products.

### 2. *The TRO Should Be Issued Without Notice to Defendants*

BMW filed this case under seal and has requested that the case remain under seal until the the freeze of Defendants' assets has been effectuated. BMW further request that the Court enter the TRO without notice to Defendants. The Court may issue a TRO without written or oral notice to the opposing party where (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (2) the moving party's attorney "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). BMW has met its burden under Federal Rule of Civil Procedure 65(b). BMW has submitted a Verified Complaint and an affidavit by Sara Copeland Parker, an associate at the law firm Kelly IP, which represents BMW. The information contained therein establishes that BMW will be irreparably harmed before the adverse party can be heard in opposition and that any attempts to notify Defendants beforehand will result in evasion of enforcement actions. Thus, the TRO will be issued ex parte.

The Court has found that Defendants' infringement, counterfeiting, and cybersquatting is causing ongoing immediate and irreparable harm to BMW. More importantly, the Court finds that BMW's efforts to give Defendants notice of their infringing conduct in the past has only caused Defendants to evade enforcement actions by moving money between PayPal accounts and changing their online domain names. Because Defendants have changed PayPal accounts in an effort to avoid enforcement efforts, the Court concludes there is a substantial risk that Defendants will dissipate the proceeds from the sale of their counterfeit goods or transfer these proceeds to accounts outside the jurisdiction of U.S. courts upon receiving notice of this action. If this occurs, BMW will be irreparably harmed because it will be deprived of the equitable remedies available to it under 15 U.S.C. § 1117, including an accounting and disgorgement of profits. *See The SCO*

*Grp., Inc. v. Novell, Inc.*, No. CIV. 2:04CV139DAK, 2007 WL 2684537, at *4 (D. Utah Sept. 7, 2007) ("Equitable remedies such as restitution, unjust enrichment, disgorgement, accounting, constructive trust, etc., require a defendant to turn over the benefits the defendant gained unjustly.").

### C. The Facts Warrant Issuance of the Requested Relief

#### 1. *The Court has the Authority to Issue an Asset Freeze*

The court has the authority to issue an asset freeze, pre-judgment, to preserve the equitable remedies available to Plaintiffs against counterfeiters under the Lanham Act. Although the Tenth Circuit has not addressed whether plaintiffs seeking an asset freeze to preserve equitable remedies can be distinguished from *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 333, (1999) (holding that a district court does not have the "authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages"), other circuits have. The Ninth, Eleventh, Fifth, and Second Circuits have all held that a district court has the authority to issue an asset freeze when plaintiffs seek equitable remedies. *See Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (distinguishing from *Grupo Mexicano de Desarrollo S.A. v. All Bond Fund Inc.,* 527 U.S. 308, 333); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (holding that "the equitable remedy of receiving [the counterfeiter's] profits under 15 U.S.C. § 1117 . . . invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief."); *2 Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 130 (2d Cir. 2014) (affirming district court's inherent authority to grant asset freeze where plaintiffs sought equitable accounting relief); and *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) (unpublished) (same).

### 2. *Plaintiffs are Entitled to Expedited Discovery*

BMW has also requested expedited discovery regarding the location and value of Defendants' financial accounts and the location and sources of the counterfeit and infringing products. Ordinarily, discovery may only be served in accordance with Fed. R. Civ. P. 26. While, "[t]he traditional sequence of discovery may . . . be altered by the court in the exercise of its broad discretion . . . . [T]he party seeking expedited discovery in advance of a Rule 26(f) conference bears the burden of showing good cause for departing from the usual discovery procedures." *Living Scriptures v. Doe(s)*, No. 1:10CV0182 DB, 2010 WL 4687679, at *1 (D. Utah Nov. 10, 2010). "Good cause exists 'where a party seeks a preliminary injunction[,] . . . where the moving party has asserted claims of infringement and unfair competition'" or "where physical evidence may be consumed or destroyed with the passage of time." *Id.* (international citation omitted). Plaintiffs have shown good cause for *limited,* expedited discovery in order to discover the location of the counterfeit goods and to secure the proceeds from the sale of the counterfeit goods, both of which are evidence of the unauthorized use of BMW's marks.

### D. A Bond is Necessary

Under Fed. R. Civ. P. 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." BMW argues that no bond is necessary because of the absence of proof of harm to Defendants. However, because BMW has requested that the TRO enter without notice to Defendants, Defendants have not had the opportunity to respond or to offer evidence of their harm. Under these circumstances, the court finds that a bond is necessary. The court sets the bond at **$50,000.00**, finding that amount sufficient to cover any costs or damages that may be incurred by Defendants should this TRO be found to have been wrongfully entered.

### III.     TEMPORARY RESTRAINING ORDER

The court hereby **ORDERS THAT:**

A.   Defendants shall immediately cease and refrain from engaging in any of the following activities, and from assisting, aiding, or abetting any other person, business, or entity in engaging in or performing any of the following activities:

1. using the BMW word mark and BMW's Logo, (collectively, the "BMW Marks"), BMW's RHEINGOLD, ISTA, ISTA/P, ISTA/D, EDIABAS, and ICOM marks (collectively, "BMW's Software and Hardware Marks"), and other trademarks owned by BMW and related companies, namely MINI, the logo , ROLLS-ROYCE, the logo , BMW MOTORRAD, or any reproductions or counterfeit copies thereof, or confusingly similar marks, including but not limited to,  and , in connection with the manufacturing, marketing, advertising, offering for sale, selling, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of any products not made by or authorized by BMW;

2. selling, distributing, destroying, or otherwise disposing of any products bearing the marks described in paragraph A.1 above;

3. passing off, inducing, or enabling others to sell or pass off any products as BMW products that are not BMW products, not produced under the authorization,

15

      control, or supervision of BMW, and/or not approved by BMW for sale under the BMW Marks and/or BMW's Software and Hardware Marks;

4. representing that Defendants are resellers, distributors, software developers for, or business partners of BMW or any of BMW's affiliated companies, or that Defendants are otherwise affiliated with, endorsed by, or sponsored by BMW or any of BMW's affiliated companies;

5. using the domain name RHEINGOLDUSA.NET and using, registering, acquiring, establishing, and creating any other domain names, associated email addresses, and URLs that are comprised of or contain any of the BMW Marks and/or any of BMW's Software and Hardware Marks;

6. using, registering, acquiring, establishing, and creating any social media pages and accounts that are comprised of or contain any of the BMW Marks and/or any of BMW's Software and Hardware Marks including, but not limited to, Defendants' "Rheingold USA LLC," "Rheingoldusa" "Rheingold ista," and "BMWGroupCertified" Facebook pages; Defendants' "Rheingoldus" Twitter account; and Defendants' "RheingoldUSA" YouTube accounts;

7. using, registering, acquiring, establishing, and creating any online store names and accounts that are comprised of or contain any of the BMW Marks and/or any of BMW's Software and Hardware Marks including, but not limited to, Defendants' "rheingoldusa" eBay store and account;

8. using, registering, acquiring, establishing, and creating any payment accounts that are comprised of or contain any of the BMW Marks and/or any of BMW's Software and Hardware Marks including, but not limited to, Defendants' PayPal

accounts using the names "RheingoldUSA.com" and "RheingoldUSA.com store"; and

9. using, reproducing, preparing derivative works of, and/or distributing BMW's copyrighted works in whole or in part, including but not limited to BMW ISTA 3.38 and BMW ISTA 4.01, or substantially similar works in any form or medium;

B. BMW may immediately serve limited discovery, without providing notice to Defendants, on PayPal and other payment processors, eBay and other online marketplace platforms, and credit card merchants. Such discovery shall be limited to that sufficient to discover the locations and amounts of any monies or funds held by such institutions that are associated with Defendants' unauthorized use of BMW's marks, as well as any name, address, telephone number, and bank accounts associated with such accounts of Defendants with the payment processors, online marketplace platforms, and credit card associations;

C. PayPal shall **immediately** freeze all PayPal accounts associated with Defendants including, but not limited to, Defendants' PayPal accounts using the names "RheingoldUSA.com" and "RheingoldUSA.com store." Any other payment processors used by Defendants to process payments from Defendants' RHEINGOLDUSA.NET website, Defendants' "rheingoldusa" eBay account, and any other accounts from which Defendants offer, ship, or sell products bearing any of the BMW Marks and/or any of BMW's Software and Hardware Marks, shall immediately freeze such accounts;

D. Within five business days of receipt of this Order, PayPal and other payment processors shall respond to BMW's expedited discovery requests regarding the locations and

amounts of monies and funds held by such payment processors in association with Defendants' PayPal accounts used in connection with the unauthorized use of BMW's marks;

E.   All online marketplace platforms including but not limited to eBay; all payment processors including but not limited to PayPal; credit card merchants including but not limited to Visa, MasterCard, American Express, and Discover, shall, within five business days of receipt of this Order, respond to BMW's expedited discovery requests regarding documents and records in their possession or control relating to any financial accounts including, but not limited to, bank accounts and payment processor accounts, owned or controlled by Defendants or their affiliates, officers, agents, servants, employees, attorneys, and all persons and entities acting for, with, by, through, under or in active concert with them, in association with the unauthorized use of BMW's Marks;

F.   BMW may serve limited discovery on Defendants regarding the sources and locations of any goods and services offered, advertised, promoted, and/or sold by Defendants that infringe or otherwise violate any of BMW's trademark and copyright rights described in A.1-9 above and that Defendants shall respond to such limited discovery within seven business days of service;

G.   Any information disclosed to BMW in response to discovery issued pursuant to this Order may be used solely for the purpose of protecting BMW's rights as set forth in the Verified Complaint and Motion;

H.   BMW shall post a bond of $50,000.00. The Bond must be in place before BMW acts to effectuate the asset freeze ordered herein.

    I.    A hearing on BMW's requested preliminary injunction is set before this court in the United States Courthouse located at 351 S. West Temple, Salt Lake City, UT 84101, before District Judge Jill N. Parrish on **April 30, 2019, at 1:00 PM**;

    J.    This case will be unsealed on Wednesday, **APRIL 24, 2019**. After the case is unsealed, BMW shall immediately cause to be served on Defendants, at BMW's own cost, the Verified Complaint and Exhibits 1-10 attached thereto, any Summons issued in conjunction with the filing of the Verified Complaint, the Motion and attached Rule 65(b) Certification, and this Order. Failure to effectuate service by **APRIL 26, 2019** shall result in the dissolution of this Order absent proof that Defendants are avoiding service.

    K.    The above dates may be revised upon stipulation by all parties and approval of the court. Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d), Federal Rule of Civil Procedure 65, and this court's inherent authority.

This Order shall go into effect immediately and remain in effect until **April 30, 2019 at 5:00 PM.**

Dated April 16, 2019 at 5:08 PM.

                                            BY THE COURT

                                            _____
                                            Jill N. Parrish
                                            United States District Court Judge