# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BMW OF NORTH AMERICA, LLC, and BAYERISCHE MOTOREN WERKE AG, <br><br> Plaintiffs, <br><br> vs. <br><br> AMMAR ISSA, RHEINGOLD USA, LLC, and RHEINGOLD USA, INC., <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br><br> Case No. 2:19-cv-220 <br><br> District Judge Jill Parrish |

Plaintiffs BMW of North America, LLC and Bayerische Motoren Werke AG (collectively, "BMW" or "Plaintiffs") brought this lawsuit against Defendants Ammar Issa, Rheingold USA, LLC and Rheingold USA, Inc. (collectively, "Defendants"), alleging that Defendants violated the Lanham Act, Copyright Act of 1976, Utah state law, and common law by committing trademark counterfeiting, trademark infringement, trademark dilution, copyright infringement, and cybersquatting. The parties have settled the matter and jointly filed a Stipulated Motion for Entry of Consent Judgment of Permanent Injunction and other Relief (the "Motion"). ECF No. 34. Having considered the Motion and Plaintiffs' supplemental briefing, *see* ECF No. 36, the court grants the Motion in part but rejects part of the proposed permanent injunction.

## I. BACKGROUND

In the Consent Judgment and Proposed Permanent Injunction, the parties stipulate to the following facts:

1. BMW has extensively used and advertised its BMW word mark (the "BMW Mark") and BMW's logo (the "BMW Logo") in connection with its

business of manufacturing, selling, and distributing an array of automobiles and motorcycles and associated software, parts, and accessories, and provides numerous services, such as maintenance and repair services, financing, leasing, insurance, and warranty services;

2. BMW has used its ISTA, ISTA/D, ISTA/P, RHEINGOLD, EDIABAS, and ICOM marks in connection with its proprietary diagnostic and programming software, and these marks are all valid, distinctive, and protectable trademarks;

3. BMW is the exclusive owner of valid and subsisting federal trademark registrations, including registrations for RHEINGOLD, ISTA, and ISTA/P, and incontestable trademark registrations for its BMW Mark and BMW Logo [*see* ECF No. 36–1], and the BMW Mark and BMW Logo are famous; and

4. BMW owns U.S. Copyright Reg. No. TX0008580756 for BMW ISTA 3.38 and No. TX0008451642 for BMW ISTA 4.01 [*see* ECF No. 36–1].

ECF No. 34–1 at 2. Plaintiffs allege that Defendants violated these ownership rights and assert claims for trademark counterfeiting under 15 U.S.C. § 1114(1), trademark infringement under 15 U.S.C. § 1114(1); trademark infringement, false designation of origin, and unfair competition under 15 U.S.C. § 1125(a)(1)(A); trademark dilution under 15 U.S.C. § 1125(c); copyright infringement under 17 U.S.C. § 101, *et seq.*; cybersquatting under 15 U.S.C. § 1125(d); trademark infringement under Utah Code § 70-3a-402; and trademark infringement, unfair competition, and misappropriation under the common law. *See id.* at 3.

## II.  PROCEDURAL HISTORY

On April 16, 2019, the court issued a Temporary Restraining Order ("TRO") against Defendants. ECF No. 12. On April 23, 2019, the court amended the TRO to extend it for eight days and allow Defendants more time "to file a bond or initiate the asset freeze on the schedule

contemplated in the initial order." ECF No. 13 at 1. Since then, Plaintiffs and Defendants have entered into a settlement agreement ("Settlement Agreement") under which they have agreed to resolve Plaintiffs' claims. On August 23, 2019, the parties filed this Stipulated Motion for Entry of Consent Judgment, *see* ECF No. 34, which included a proposed order for a permanent injunction, *see* ECF No. 34–1 (collectively, "Consent Judgment and Proposed Permanent Injunction").

The court asked the parties to file exhibits that the parties failed to attach to the Consent Judgment and Proposed Permanent Injunction and to submit supplemental briefing to address whether the Consent Judgment and Proposed Permanent Injunction compels action by nonparty entities that would exceed the proper scope of an injunction under Fed. R. Civ. P. 65(d)(2) ("Rule 65(d)(2)"). Specifically, the court raised concerns with paragraphs E and F of the Proposed Permanent Injunction, which Plaintiffs recognize would "require[e] online marketplace platforms, website hosting providers, ISPs, domain name registrars, social media platforms, advertising providers/vendors, financial service providers, and Secretary of State offices to disable, take down, or cancel Defendants' various infringing accounts, domain names, social media sites, and filings." ECF No. 36 at 4. Paragraph E states:

> E. Those in privity with Defendants and those with actual notice of this Consent Judgment, including, without limitation, any online marketplace platforms (e.g., eBay, Amazon); any website hosting providers and Internet service providers ("ISPs"); any domain name registrars; any social media platforms (e.g., Facebook, Twitter, Instagram, YouTube); any advertising providers/vendors and/or Internet search engines providing keyword-triggered advertising and other types of online advertising (e.g., Facebook, Google, Bing); any financial-service providers, including credit card and payment processing vendors (e.g., PayPal) and banks are hereby ORDERED, upon presentation of a copy of this Order, to:
>
>> 1. For online marketplace platforms, disable and shut down any online marketplace accounts in violation of any of Paragraphs D.1-9 [of the Consent Judgment and Proposed Permanent Injunction] including, but not limited to, Defendants' "rheingoldusa" eBay store and account, and any other online marketplace store or account names that are comprised of or

contain any of the BMW Marks, any of BMW's Software and Hardware Marks, and/or any confusingly similar marks;

2. For website hosting providers and ISPs, terminate all of the ISP and hosting services for websites in violation of any of Paragraphs D.1-9 [of the Consent Judgment and Proposed Permanent Injunction] and take down and shut down all such websites including, but not limited to, RHEINGOLDUSA.NET and any other websites with associated domain names that are comprised of or contain any of the BMW Marks, any of BMW's Software and Hardware Marks, and/or any confusingly similar marks;

3. For domain name registrars, transfer to Plaintiffs ownership of domain names in violation of any of Paragraphs D.1-9 [of the Consent Judgment and Proposed Permanent Injunction] including, but not limited to, RHEINGOLDUSA.NET, RHEINGOLDUSA.ORG, RHEINGOLDUSA.INFO, and RHEINGOLDUSA.US and any other domain names that are comprised of or contain any of the BMW Marks, any of BMW's Software and Hardware Marks, and/or any confusingly similar marks;

4. For social media platforms, disable and shut down all social media accounts and associated pages in violation of any of Paragraphs D.1-9 [of the Consent Judgment and Proposed Permanent Injunction] including, but not limited to Defendants' "Rheingold USA LLC," "Rheingoldusa" "Rheingold ista," "BMWGroupCertified" and "Rheingold USA" Facebook pages; Defendants' "Rheingoldus" Twitter account; and Defendants' "RheingoldUSA" YouTube accounts, and all other social media accounts using account or page names or handles that are comprised of or contain any of the BMW Marks, any of BMW's Software and Hardware Marks, and/or any confusingly similar marks;

5. For advertising providers/vendors and/or Internet search engines providing keyword-triggered advertising and other types of online advertising, disable and cease providing services used by Defendants, currently and in the future, to engage in the advertisement and/or sale of any of BMW's software products or portions thereof, or any products using any of the BMW Marks, BMW's Software and Hardware Marks and/or any confusingly similar marks, and immediately cancel such accounts, and cancel and permanently block any advertisements used by or associated with Defendants in connection with the sale of products using the BMW Marks, BMW's Software and Hardware Marks, and/or any confusingly similar marks, or BMW's software or any portion thereof; and

> 6. For financial service providers including credit card and payment processing vendors and banks, disable and shut down such accounts of Defendants including, but not limited to, Defendants' "RheingoldUSA.com" and "RheingoldUSA.com store" PayPal accounts, Defendants' "rheingoldusa" eBay account, and any other accounts using names that are comprised of or contain any of the BMW Marks, any of BMW's Software and Hardware Marks, and/or any confusingly similar marks.

ECF No. 34–1 at 5–8. Paragraph F states:

> F. The Secretary of State offices and any other state and local agencies and authorities with which Defendants have registered, filed, or recorded any corporate names, business names, trade names, assumed names, and fictitious names that violate any of Paragraphs D.1-9 [of the Consent Judgment and Proposed Permanent Injunction] including, but not limited to, the names "Rheingold USA LLC" and "Rheingold USA Inc." and any other names that are comprised of or contain any of the BMW Marks, any of BMW's Software and Hardware Marks, and/or any confusingly similar marks are hereby ORDERED, upon receipt of a copy of this Order, to immediately and permanently cancel, revoke, or remove such registrations and filings as applicable.

*Id.* at 8.

The court asked the parties to address whether these paragraphs seeking to bind nonparties would violate Rule 65(d)(2) and noted that "the court is inclined to strike paragraphs E and F from the [Consent Judgment and Proposed Permanent Injunction]." ECF No. 35. Plaintiffs submitted the requested supplemental briefing and made three principal arguments in support of enjoining the nonparty entities listed in paragraphs E and F. First, Plaintiffs contended that an injunction binding nonparties is appropriate under the Lanham Act, which gives district courts the broad "authority to grant injunctions 'according to the principles of equity and upon such terms as the court may deem reasonable.'" ECF No. 36 at 2 (quoting 15 U.S.C. § 1116). Second, Plaintiffs pointed to other district courts that have issued orders compelling action by nonparties to give "practical effect" to the permanent injunction. *See id.* at 2–4. Third, Plaintiffs made several policy arguments in favor of enjoining the identified nonparties because "Defendants' actions in this case

5

make clear the necessity of requiring third parties to act." ECF No. 36 at 4. None of these arguments or authorities address the court's concerns with regard to the Rule 65(d)(2) limitations on enjoining nonparties. The court rejects Plaintiffs' arguments and strikes paragraphs E and F from the parties' Consent Judgment and Proposed Permanent Injunction because those provisions exceed the proper scope of an injunction under Rule 65(d)(2).

### III. LEGAL STANDARD

Generally, "a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." e*Bay Inc. v. MercExchange, L.L.C*., 547 U.S. 388, 391 (2006). Here, however, the parties have stipulated to the Proposed Permanent Injunction, which obviates the need for Plaintiffs to prove these four elements. But the parties' stipulation does not entirely resolve the outcome of this case or guarantee the relief sought, and district courts "are vested with broad discretion in determining . . . whether the interests of justice require that the stipulation be set aside" or otherwise augmented. *See Wheeler v. John Deere Co*., 935 F.2d 1090, 1098 (10th Cir. 1991) (citation omitted). "A consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature," but to "be enforceable as[] a judicial decree" it is still "subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 378 (1992). This includes the dictates of the Federal Rules of Civil Procedure. *See id.* at 378–79; *see also Consumers Gas & Oil, Inc. v. Farmland Indus., Inc*., 84 F.3d 367, 370 (10th Cir. 1996) (stating that "Rule 65(d) governs the form and scope of injunctive orders" used to enforce a settlement agreement).

## IV. ANALYSIS

### A. PARTIES TO BE BOUND BY A PERMANENT INJUNCTION

The court must first consider the proper reach of a permanent injunction pursuant to a consent judgment—specifically, the permissibility of an injunction seeking to bind entities that are not parties to this lawsuit. Rule 65(d)(2) governs the scope of entities to be bound by an injunction or restraining order:

> (2) Persons Bound. The order binds only the following who receive actual notice of it by personal service or otherwise:
>     (A) the parties;
>     (B) the parties' officers, agents, servants, employees, and attorneys; and
>     (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

FED. R. CIV. P. 65(d)(2). Subsection (2)(A) codifies the longstanding "principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'" *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)).[1] Accordingly, Rule 65(d)(2) as a general matter "limits . . . the extent to which an injunction may be enforced against nonparties," *Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*, 628 F.3d 837, 847 (7th Cir. 2010), and enacts the policy "of not having 'order(s) or injunction(s) so broad as to make punishable the conduct of persons who act independently and whose rights have not

---

[1] *See also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969) ("It is elementary that one is not bound by a judgment *in personam* resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process."); 11A CHARLES ALAN WRIGHT ET AL, FED. PRAC. & PROC. CIV. § 2956 at 384–85 (3d ed. 2013) ("A court ordinarily does not have power to issue an order against a person who is not a party and over whom it has not acquired *in personam* jurisdiction. Therefore, persons who are not actual parties to the action or in privity with any parties may not be brought within the effect of a decree merely by naming them in the order.").

been adjudged according to law,'" *Golden State Bottling Co. v. N.L.R.B.*, 414 U.S. 168, 180 (1973) (quoting *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945)).

### 1. Enjoining Agents and Officers of the Parties

Subsection (2)(B) authorizes the court to enjoin certain nonparty persons or entities that form an agency relationship with a party to a lawsuit, which is "based on the idea that an order issued to a corporation is identical to an order issued to its officers, for incorporeal abstractions act through agents." *Nat'l Spiritual Assembly*, 628 F.3d at 848 (internal citations, quotations, and alterations omitted). Stated differently, Subsection (2)(B) provides that "officers, employees, and other agents of an enjoined party must obey the injunction—even though they are not named parties—when they act in their official capacities." *Id.* (citation omitted); *see also S.E.C. v. Barraco*, 438 F.2d 97, 98 (10th Cir. 1971) ("[T]he officers of the corporation are realistically regarded as being the doers of the act or acts sought to be enjoined and as thus being directly subject to the injunction's prohibition").

In this case, paragraph D of the parties' Consent Judgment and Proposed Permanent Injunction seeks to bind "Defendants and their affiliates, officers, agents, servants, employees, attorneys, and all persons and entities acting for, with, by, through, under or in active concert with them." ECF No. 34–1 at 3. This paragraph comports with the scope of injunctions established in Rule 65(d)(2). *See* FED. R. CIV. P. 65(d)(2)(A)–(B).

### 2. Enjoining Other Nonparties Under Two Exceptions

In addition, Subsection (2)(C) codifies two exceptions to the general principle that injunctions may only bind parties to a lawsuit or their agents. *See Nat'l Spiritual Assembly*, 628 F.3d at 848. Under Rule 65(d)(2)(C), injunctions may reach nonparties if: (1) the nonparty "aids or abets a named defendant" in committing the underlying violation or disobeying the court's order, *Reliance Ins. Co. v. Mast Const. Co.*, 84 F.3d 372, 377 (10th Cir. 1996) (citations omitted); or (2)

8

the nonparty is "captured under the general rubric of privity, includ[ing] nonparty successors in interest and nonparties otherwise legally identified with the enjoined party," *ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348, 1352 (11th Cir. 2017) (citing *Nat'l Spiritual Assembly*, 628 F.3d at 848–49) (internal quotations omitted). Moreover, these eligible nonparties must "receive actual notice of the injunction to be bound by it," *Scalia v. Paragon Contractors Corp.*, No. 18-4147, 2019 WL 6652002, at *4 (10th Cir. Dec. 6, 2019) (unpublished), and the reach of an injunction to nonparties is still "ultimately bounded by due process," *Nat'l Spiritual Assembly*, 628 F.3d at 849 (citation omitted). Here, Plaintiffs fail to demonstrate that enjoining the nonparty entities listed in paragraphs E and F of the Proposed Permanent Injunction is authorized under either the "aiders and abettors" or the "privity" exceptions in Rule 65(d)(2)(C).

### (i) Aiders and Abettors Exception

Plaintiffs have not demonstrated that the nonparty entities listed in paragraphs E and F of the Consent Judgment and Proposed Permanent Injunction have in any way aided or abetted the Defendants' unlawful trademark infringement or any of the court's prior orders. A nonparty may be subject to an injunction if it "aids or abets a named defendant" in committing the underlying violation or disobeying an injunction. *Reliance Ins. Co.*, 84 F.3d at 377. In *Reliance*, the Tenth Circuit applied the aiders and abettors exception to a nonparty bank that had worked with the defendant corporation to violate a prior restraining order prohibiting the corporation and its officers from withdrawing or transferring certain funds. *See* 84 F.3d at 376–77. The Tenth Circuit ruled that the bank could be held in contempt for violating the injunction under Rule 65(d)(2) if it had actual notice of the prior restraining order and had "aided and assisted . . . in completing a fairly complicated series of fund withdrawals and transfers in apparent violation of the . . . restraining order." *Id.* at 377. But the Tenth Circuit remanded the case to the district court to determine whether

9

the bank had "actual notice" of the prior restraining order to be in a position to "aid and abet" the defendant corporation in evading the order. *See id.*

More recently, the Tenth Circuit reinforced the proper application of the aiders and abettors exception in *Lundahl v. Global E. LLC*, 643 F. App'x 752 (10th Cir. 2016) (unpublished). In *Lundahl*, a nonparty challenged the scope of an injunction against her and her sister. *Id.* at 752. The sister of the nonparty was a party in a prior lawsuit in which the court ordered that the sister must obtain preapproval from the court before filing any future pro se lawsuits. *Id.* at 753. The district court included the nonparty sister in the injunction because the party sister "simply uses her [nonparty] sister as a pawn in . . . vexatious litigation tactics." *Id.* The Tenth Circuit applied the "aided and abetted" exception and held that enjoining the nonparty sister in the prior restraining order was permissible because the nonparty sister had notice of the order and had "aided her sister's disobedience by jointly filing" a lawsuit that violated the order. *Id.*

The aiders and abettors exception applied in *Reliance* and *Lundahl* does not authorize enjoining the nonparty entities listed in paragraphs E and F of the Consent Judgment and Proposed Permanent Injunction. First, as a prerequisite to binding nonparties in a subsequent injunction, Rule 65(d)(2) and due process principles requires that nonparties be given "actual notice of [the prior injunction] by personal service or otherwise." WRIGHT ET AL, *supra*, § 2956 (discussing due process and notice concerns); *see also Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 444 (1974) (stating that "one basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits" (footnote omitted)). Just as in *Reliance*, the parties have not demonstrated that the nonparty entities from which they seek to compel action have actual notice of any order from this court. *See* 4 F.3d at 377. This alone is

sufficient to reject Plaintiffs' contention that the listed nonparty entities may be enjoined as aiders and abettors of Defendants' alleged unlawful or violative conduct.

Second, unlike in *Reliance* and in *Lundahl*, Plaintiffs have not demonstrated that any of the nonparty entities have aided and abetted Defendant in its underlying Lanham Act violation or in evading the Amended TRO that the court issued on April 23, 2019. *See* ECF No. 12.[2] Nor have Plaintiffs made any allegations to suggest that the identified nonparty entities are likely to aid and abet Defendants in any future violations after the court enjoins the Defendants and their agents and officers through other approved provisions of the Consent Judgment and Proposed Permanent Injunction.

The rejected provisions of the Consent Judgment and Proposed Permanent Injunction that reaches nonparties in this case closely resembles a proposed injunction that the Seventh Circuit also rejected in *Blockowicz v. Williams*, 630 F.3d 563 (7th Cir. 2010). In *Blockowicz*, the plaintiffs sought an injunction compelling a nonparty internet website host to remove defamatory material from its website pursuant to a permanent injunction issued in a prior action involving the defaming and defamed parties. *See* 630 F.3d at 565–66. The Seventh Circuit held that it lacked authority under Rule 65(d)(2) to issue such an injunction against the nonparty website host. *Id.* at 568–70. The court reasoned that although the website host had received actual notice of the prior injunction between the defaming and defamed parties, the plaintiffs had not presented any evidence to prove that the website host "took any action to aid or abet the defendants in violating the injunction after it was issued." *Id.* at 568. Rather, the court found that the nonparty website host had "simply done nothing relevant to this dispute" after the injunction, and "the fact that [the nonparty] is technologically capable of removing the postings does not render its failure to do so aiding and

---

[2] As explained above, the court issued the original TRO on April 16, 2019. *See* ECF No. 12.

abetting." *Id.* Thus, the Seventh Circuit ruled that the nonparty's "mere inactivity is simply inadequate to render them aiders and abettors in violating the injunction." *Id.* Similarly here, Plaintiffs have not demonstrated how the relevant nonparties have acted at all since the court issued its Amended TRO on April 23, 2019, much less how any of the identified nonparties' involvement may be considered actively "aiding and abetting" the Defendants' potential violations.

In sum, it is at best premature to issue an injunction reaching the nonparty entities that the parties list in paragraphs E and F of their Consent Judgment and Proposed Permanent Injunction because Plaintiffs have presented no evidence regarding those entities' actual notice of the court's prior orders. And even if the nonparty entities have received actual notice, Plaintiffs have failed to show how any of these nonparty entities have affirmatively acted to "aid and abet" the Defendants in evading a prior order or in committing the alleged underlying unlawful conduct. Therefore, the aiders and abettors exception does not warrant enjoining the nonparty entities listed in paragraphs E and F of the Consent Judgment and Proposed Permanent Injunction.

### (ii) Privity Exception

The parties have similarly failed to demonstrate that the nonparty entities from which they seek to compel action in paragraphs E and F of the Consent Judgment and Proposed Permanent Injunction are in privity with Defendants. The Tenth Circuit has long recognized that "[a]n injunctive decree may bind not only the parties defendant but also those who are represented by them or who are subject to their control or in privity with them." *Hodgson v. Humphries*, 454 F.2d 1279, 1284 (10th Cir. 1972) (quoting *Int'l Bhd. of Teamsters, Local Union No. 523, of Tulsa, Okl. v. Keystone Freight Lines*, 123 F.2d 326, 329 (10th Cir. 1941)). However, the Tenth Circuit has not expressly delineated what types of relationships constitute being "in privity" under Rule 65(d)(2)(C). Accordingly, the court looks to persuasive opinions from other circuits, which have

summarized the caselaw to recognize two types of privity relationships: (1) "nonparty successors in interest," and (2) "nonparties otherwise 'legally identified' with the enjoined party." *ADT LLC*, 853 F.3d at 1352 (quoting *Nat'l Spiritual Assembly*, 628 F.3d at 848–49); *see also Texas v. Dep't of Labor*, 929 F.3d 205, 211 (5th Cir. 2019) (recognizing similar privity subcategories).

In interpreting the bounds of these subcategories of the privity exception, the court is also guided by the principle that an "injunction may not extend to 'persons who act independently and whose rights have not been adjudged according to law,'" *ADT LLC*, 853 F.3d at 1352 (quoting *Chase Nat'l Bank v. City of Norwalk*, 291 U.S. 431, 437 (1934)), and "[t]he concept of privity" must be "ultimately bounded by due process," *Nat'l Spiritual Assembly*, 628 F.3d at 849 (citing *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996) for proposition that "there are clearly constitutional limits on the 'privity' exception"). Applied here, neither subcategory of the privity exception covers the nonparty entities that the parties seek to enjoin in paragraphs E and F of the Consent Judgment and Proposed Permanent Injunction.

### a) *"Successor in Interest" Privity Relationship*

First, injunctions may bind nonparties who are "successors in interest" to a party to the litigation. *See, e.g.*, *ADT LLC*, 853 F.3d at 1352; *Nat'l Spiritual Assembly*, 628 F.3d at 848–49. The successors in interest privity relationship includes a subsequent "bona fide purchaser" of the party subject to an existing injunction that has "knowledge that the wrong remains unremedied," *see Golden State Bottling Co.*, 414 U.S. at 180, and a separate entity that has "operated as a disguised continuance of" the party to the lawsuit, *Scalia*, 2019 WL 6652002, at *4; *see also Regal Knitwear Co.*, 324 U.S. at 14 (recognizing "disguised continuance" privity relationship). The parties have not alleged that the nonparty entities listed in paragraphs E and F of the Consent Judgment and Proposed Permanent Injunction are subsequent bona fide purchasers of Defendant. Nor have the

parties alleged that the nonparty entities operate as a disguised continuance of Defendant. Thus, the listed nonparty entities do not have this type of privity relationship to the parties in this lawsuit and may not be enjoined on this basis.

### b) *"Legally Identified" Privity Relationship*

Second, an injunction may bind nonparties that are "otherwise 'legally identified' with the enjoined party." *ADT LLC*, 853 F.3d at 1352 (quoting *Nat'l Spiritual Assembly*, 628 F.3d at 848–49); *see also Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930) (Hand, J.) (applying the common law doctrine that a nonparty may be punished for violating an injunction if that nonparty is "legally identified" with the enjoined party). The Tenth Circuit recognizes that such a "legally identified" relationship goes beyond those listed in Rule 65(d)(2)(B) to include "persons who are 'not technically agents or employees'" that "may be specifically enjoined from knowingly aiding a defendant in performing a prohibited act if their relation is that of associate or confederate," *Pimentel & Sons Guitar Makers, Inc. v. Pimentel*, 477 F.3d 1151, 1155 (10th Cir. 2007) (quoting *Int'l Bhd. Of Teamsters, Local 523*, 123 F. 2d at 329)). For example, an injunction or "judgment that is binding on a guardian or trustee may also bind the ward or the beneficiaries of a trust." *Richards*, 517 U.S. at 798; *see also Hershey v. ExxonMobil Oil Corp*., 550 F. App'x 566, 572 (10th Cir. 2013) (unpublished) (recognizing that a trust and the trust attorneys are "those acting in concert" with the trustees that are parties to the lawsuit). Additionally, nonparties that are "legally identified" with an enjoined party include other "instrumentalities through which [a party] seeks to evade an order." *N.L.R.B. v. Birdsall-Stockdale Motor Co*., 208 F.2d 234, 237 (10th Cir. 1953).

The parties here have not alleged that the nonparties listed in paragraphs E and F share any of these "legally identified" relationships with Defendants. Instead, the court understands the nonparty entities to be legal strangers to the Defendants. The nonparty entities listed in paragraph

E provide business services to Defendants in the form of web hosting, advertising and marketplace platforms, or banking and financial services. But merely conducting business with or providing services to Defendants does not render these nonparty entities legally identified with Defendants or establish a privity relationship between them. *See, e.g.*, *Nike, Inc. v. Wu*, No. 13-cv-8012-CM, 2020 WL 257475, at *19 (S.D.N.Y. Jan. 17, 2020) (unpublished) (observing that federal courts "have repeatedly rejected the argument that a bank is 'in active concert and participation' when it provides routine banking activities to an enjoined party" (quoting FED. R. CIV. P. 65(d)(2)(C)). Paragraph F also seeks to compel action from state and local government agencies that administer registration and licensing related to trademarks. But Plaintiffs have failed to prove why these agencies have any legally identified privity relationship with Defendants. *See, e.g.*, *CommScope, Inc. of N. Carolina v. Commscope (U.S.A.) Int'l Grp. Co.*, 809 F. Supp. 2d 33, 42 (N.D.N.Y. 2011) (refusing to compel a state "Secretary of State to dissolve [d]efendant's corporate name in the event that [d]efendant fails to do so . . . because, among other things, injunctive relief may not ordinarily be issued against non-parties").

In sum, the parties fail to demonstrate that the nonparty entities from which they seek to compel action in paragraphs E and F of the Consent Judgment and Proposed Permanent Injunction are in privity with Defendants because the nonparty entities are neither "successors in interest" of Defendants nor are they "legally identified" with Defendants. Therefore, the Subsection (2)(C) privity exception also does not justify enjoining the nonparty entities listed in paragraphs E and F of the Consent Judgment and Proposed Permanent Injunction.

### B. LANHAM ACT INJUNCTIONS

Plaintiffs also contend that the Lanham Act authorizes enjoining the nonparty entities listed in paragraphs E and F of the Consent Judgment and Proposed Permanent Injunction. *See* ECF No. 36 at 2. The Lanham Act imposes liability on any person who, without the consent of the trademark

registrant, uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(a). To enforce this provision, the Lanham Act also states that district courts "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of" a trademark owner. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corporation v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

But the court has found no authority to suggest that an injunction enforcing a party's rights under the Lanham Act may circumvent Rule 65(d)(2) or due process constraints on the scope of injunctions. Instead, the court has found broad consensus in persuasive cases from sister circuits indicating that injunctions under the Lanham Act may only enjoin the parties, their agents or officers, or nonparties falling under the subsection (2)(C) exceptions described above. *See, e.g.*, *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 275 (2d Cir. 2011); *Marshak v. Treadwell*, 595 F.3d 478, 486–91 (3d Cir. 2009); *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 546 (6th Cir. 2014); *ADT LLC*, 853 F.3d at 1350; *see also Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1128 (9th Cir. 2006) (applying other Rule 65 requirements to an injunction in a Lanham Act case). Moreover, other district court decisions within the Tenth Circuit have cabined injunctions under the Lanham Act because of the Rule 65(d)(2) framework. *See, e.g.*, *Otter Prod., LLC v. Fisch Enter., Inc.*, No. 19-CV-00030-CMA-KLM, 2019 WL 7290937, at *8 (D. Colo. Oct. 3, 2019) (unpublished); *Harris Research, Inc. v. Kraetsch*, No. CIV. 1:06-CV-127, 2007 WL

2220469, at *2–3 (D. Utah July 30, 2007) (unpublished); *see also Pimentel & Sons Guitar Makers, Inc. v. Pimentel*, No. CIV-04-0360JBRLP, 2005 WL 3664269, at *4 (D.N.M. Oct. 12, 2005) (unpublished) (ruling that "[t]he terms of any injunction must be specific, with its scope constrained to the parties affected"). In short, injunctions seeking to enforce a trademark registrant's rights under the Lanham Act are not exempted from the constraints of Rule 65(d)(2), and the Lanham Act's broad language does not authorize enjoining the nonparty entities listed in paragraphs E and F of the Consent Judgment and Proposed Permanent Injunction.

## V.  ORDER

For the foregoing reasons, the court STRIKES paragraphs E and F from the parties' Consent Judgment and Proposed Permanent Injunction. *See* ECF No. 34–1 at 5–9. Having found good cause for the other provisions of the parties' Consent Judgment and Proposed Permanent Injunction, the court will separately enter the Consent Judgment and Proposed Permanent Injunction after striking the proposed paragraphs E and F.

Signed March 20, 2020

BY THE COURT:

*/s/ Jill N. Parrish*

———————————————
Jill N. Parrish
United States District Court Judge
