IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BMW OF NORTH AMERICA, LLC and BAYERISCHE MOTOREN WERKE AG,<br><br>Plaintiffs,<br><br>v.<br><br>AMMAR ISSA, RHEINGOLD USA, LLC, and RHEINGOLD USA, INC.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CONTEMPT AND TO ENFORCE THE PARTIES' SETTLEMENT AGREEMENT, AND FOR EXPEDITED DISCOVERY<br><br>Case No. 2:19-cv-00220-JNP-DBP<br><br>Chief District Judge Jill N. Parrish |

Before this court is plaintiffs' motion for contempt and to enforce the parties' settlement agreement, and for expedited discovery. Dkt. No. 41. For the following reasons, the motion is GRANTED in part. Plaintiffs are granted expedited discovery for a period of sixty days beginning on the date of this order, and they must file a status report within fourteen days of the close of the discovery period. Defendants are ordered to show cause within thirty days of the filing of plaintiffs' status report why they should not be held in contempt of this court's permanent injunction.

**BACKGROUND**

On April 2, 2019, plaintiffs BMW of North America, LLC and Bayerische Motoren Werke AG filed this action against defendants Ammar Issa, Rheingold USA, LLC, and Rheingold USA, Inc. Dkt. No. 1. In their complaint, plaintiffs alleged that defendants were violating the Lanham Act, Copyright Act of 1976, Utah state law, and common law by committing trademark counterfeiting, trademark infringement, trademark dilution, copyright infringement, and

cybersquatting. *Id.* ¶ 1. Plaintiffs complained that defendants were selling unauthorized products, including merchandise and software, over the internet. *Id.* ¶¶ 41–77.

On April 16, 2019, this court issued a temporary restraining order that enjoined defendants from, among other things, using plaintiffs' word marks or logos. Dkt. No. 12. On May 7, 2019, the parties filed a stipulated motion for a preliminary injunction, which the court granted. Dkt. Nos. 26, 27. The parties then stipulated to the entry of a consent judgment, which the court granted in part and denied in part. Dkt. Nos. 34, 37. Pursuant to the consent judgment, the court permanently enjoined "Defendants and their affiliates, officers, agents, servants, employees, attorneys, and all persons and entities acting for, with, by, through, under or in active concert with them" from engaging in continued copyright and trademark infringement. Dkt. No. 38, ¶ D.

Just under six years later, on March 6, 2026, plaintiffs filed a motion for contempt and to enforce the parties' settlement agreement, and for expedited discovery. Dkt. No. 41. Plaintiffs' motion alleges that a new entity, OBD Hawk, has engaged in unauthorized uses of plaintiffs' intellectual property by "using the BMW logo and ISTA logo on all of its hardware products, cables, tablets, and flash drives, and selling suspected illegal copies of BMW's ISTA software, among various other unauthorized uses of BMW's intellectual property . . . ."[1] Dkt. No. 41, at 7.

Although OBD Hawk was not a party to the 2020 permanent injunction, plaintiffs argue that it and defendant Rheingold USA "share several objective indicia of an association or affiliation." *Id.* at 12. Specifically, they argue that the domain name for the OBD Hawk website, OBDHAWK.COM, was registered from Utah; the contact information on the OBD Hawk

[1] "ISTA" refers to BMW's proprietary diagnostic software that the company offers "only to BMW's authorized dealers and certain other permitted parties, such as independent qualified repair centers that pay for access to BMW's diagnostic software." Dkt. No. 1 ¶ 25.

Facebook page matches the contact information associated with defendant Rheingold USA; the return address on a package purchased by plaintiffs from OBD Hawk also matches the contact information associated with Rheingold USA.; and the email address on the PayPal receipt for that purchase is associated with individuals residing at defendant Ammar Issa's address. *Id.* at 12–13. Plaintiffs also argue that there are substantial similarities between the designs of the Rheingold USA website and the OBD Hawk website. *Id.* at 13–15.

On January 29, 2026, plaintiffs served defendants with a letter containing a copy of the 2020 permanent injunction and a demand that OBD Hawk immediately stop all infringing activities. *Id.* at 15. Defendant Ammar Issa was personally served with this letter. *Id.*

Plaintiffs now move this court to hold defendants and OBD Hawk in contempt of the 2020 permanent injunction and to order that defendants pay a monetary penalty and plaintiffs' attorneys' fees associated with the contempt proceedings. *Id.* at 16–22. Plaintiffs seek liquidated damages and attorneys' fees as outlined in the parties' settlement agreement, as well as "a period of 60 days to pursue discovery" "to uncover the exact extent and specific manner of [defendants'] violations." *Id.* at 22–23. Alternatively, plaintiffs argue that this court should order "Defendants and OBD Hawk to show cause as to why they should not be held in contempt and/or liable for liquidated damages pursuant to the Permanent Injunction and the parties' Settlement Agreement." *Id.* at 23.

Defendants did not respond to plaintiffs' motion. On April 3, 2026, plaintiffs filed a request that this motion be submitted for decision. Dkt. No. 53.

## LEGAL STANDARD

This court has broad discretion in using its contempt power to assure compliance with its orders. *Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1231 (10th Cir. 2001). "To prevail in a civil contempt proceeding, the plaintiff has the burden of proving, by clear and convincing evidence, that a valid

court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order." *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998) (citation omitted). Once the plaintiffs make such a showing, the burden shifts to the defendants to show either that they had complied with the order or that they could not comply with it. *United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008).

## DISCUSSION

Plaintiffs have shown that defendants and OBD Hawk have likely violated this court's permanent injunction and that they should be held in contempt. First, plaintiffs have demonstrated that a valid order exists; indeed, it was in this case that this court entered the permanent injunction in 2020. Dkt. No. 38. Second, because Mr. Issa was a party to the initial action, plaintiffs have demonstrated that defendants had knowledge of the order. Both OBD Hawk and Rheingold USA share the same address, and Mr. Issa himself appears to have accepted service of plaintiffs' letter to OBD Hawk informing it of potentially infringing activities. Dkt. No. 41, at 15. Third, as explained below, plaintiffs have put forth ample evidence that defendants disobeyed the permanent injunction by demonstrating that OBD Hawk is operating as a disguised continuance of Rheingold USA.

### I. OBD Hawk is Subject to the Permanent Injunction.

OBD Hawk was not a party to the permanent injunction issued by this court in 2020. Dkt. No. 38. But plaintiffs' evidence demonstrates that defendants are violating this court's permanent injunction through OBD Hawk. Mr. Issa, as the individual residing at the address associated with OBD Hawk, appears to operate the entity. *See* Dkt. No. 41, at 12–15 (detailing the connection between Mr. Issa and OBD Hawk). And Mr. Issa is personally bound by the injunction because he is a party to it. *See* FED. R. CIV. P. 65(d)(2) (describing the persons bound by injunctions as the

parties; the parties' officers, agents, servants, employees, and attorneys; and other persons who are in active concert or participation with them).

OBD Hawk, as a separate entity, also falls within the bounds of Rule 65(d)(2) because it is operating a disguised continuance of Rheingold USA. Rule 65 provides for exceptions to the default rule that only parties to an injunction may be bound by it; this court analyzed two of those exceptions in a previous order. *See* Dkt. No. 37, at 8–15 (detailing the "aiders and abettors" and "privity" exceptions within Rule 65(d)(2)). Under one such exception known as the "privity" exception, "injunctions may bind nonparties that are 'successors in interest' to a party to the litigation." Dkt. No. 37, at 13. A court may find that a nonparty is bound by an injunction as a successor in interest if that nonparty has "'operated as a disguised continuance of' the party to the lawsuit." *Id.* (quoting *Scalia v. Paragon Contractors Corp.*, 796 Fed. App'x 962, 968 (10th Cir. 2019) (unpublished)).

The facts underlying this situation are analogous to those in *Scalia*, 796 Fed. App'x 962. In that case, plaintiffs suspected "that [a new company] was taking over [the old company's] operations in an effort to evade" an injunction the court had previously issued. *Id.* at 965. Except for its new name, the new company appeared in all other respects to be the same as the old company. The new and old companies shared a phone number and email address, operated out of the same building, and performed similar work. *Id.* The district court concluded that the new company was a successor to the old company, and that the business operations were transferred to evade the court's earlier injunction. *Perez v. Paragon Contractors Corp.*, 340 F. Supp. 3d 1194, 1211 (D. Utah 2018). Reasoning that the new and old companies were effectively "one and the same," the court ordered that the new company be joined as a defendant to the action and held that both companies were in civil contempt of the injunction. *Id.* at 1214, 1216–17. On appeal, the

Tenth Circuit affirmed the district court's application of the contempt order to the new company because "the record clearly and convincingly establishes that [the new company] operated as a disguised continuance of [the old company]" and "that the purpose of this transition was to evade compliance with the [court's prior] injunction." *Scalia*, 796 Fed. App'x at 968. The court of appeals concluded that the new company had actual knowledge of the injunction because a party to the district court's injunction was an agent of the old company when that injunction was issued. *Id.* at 969.

Simply put, a party to an injunction cannot evade that injunction by renaming itself but otherwise carrying on with the enjoined activities. *Id.*; *see also New York ex rel. Vacco v. Operation Rescue Nat'l*, 80 F.3d 64, 70 (2d Cir. 1996) ("[A]n organization and its agents may not circumvent a valid court order merely by making superficial changes in the organization's name or form, and in appropriate circumstances a court is authorized to enforce its order against a successor of the enjoined organization."); *G. & C. Merriam Co. v. Webster Dictionary Co., Inc.*, 639 F.2d 29, 40 (1st Cir. 1980) ("A party and his privies cannot circumvent a court's injunction against the activities they had effectuated before the injunction, through one legal entity, by the creation of another entity through which they, or some of them, continue essentially the same activity.").

As much has occurred here. OBD Hawk appears to be one and the same as Rheingold USA. It sells the same products from the same location under the direction of the same people. Accordingly, OBD Hawk is operating as a disguised continuance of Rheingold USA.

## II. Plaintiffs are Granted Expedited Discovery.

Plaintiffs argue that they should be permitted additional discovery for the purpose of determining the exact extent and specific manner of defendants' violations. Specifically, they seek "a full inventory of the amount of infringing and counterfeit products sold, an accounting of

Defendants' and OBD Hawk's illicit profits, and discovery as to any additional connection between Defendants and OBD Hawk to the extent the Court so requires." Dkt. No. 41, at 23.

A party seeking expedited discovery bears the burden of showing good cause for departing from the usual discovery procedures. *See Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003). Here, plaintiffs have shown "good cause" for expedited discovery. Plaintiffs have provided ample evidence connecting defendants to OBD Hawk, and defendants have failed to respond to plaintiffs' motion. Moreover, plaintiffs request a reasonably narrow range of information regarding the connection between defendants and OBD Hawk, as well as the products OBD Hawk has sold. Dkt. No. 41, at 23. *See Monsanto Co. v. Woods*, 250 F.R.D. 411, 413 (E.D. Mo. 2008) ("Plaintiffs have made reasonable attempts to gather the relevant evidence with defendant's cooperation and have narrowly tailored their request for expedited discovery to a limited set of documents and physical samples.").

Accordingly, plaintiffs are granted expedited discovery for a period of sixty days beginning with the date of this order, with defendants' responses to interrogatories and document requests and document production due by email service no later than seven calendar days after service. Plaintiffs may serve interrogatories and document requests concerning 1) a full inventory of the amount of infringing and counterfeit products sold, 2) an accounting of defendants' and OBD Hawk's profits, and 3) the connection between defendants and OBD Hawk. Plaintiffs must file a status report with this court within fourteen days following the close of the expedited discovery period.

### III. Defendants are Ordered to Show Cause Why They Should Not Be Held in Contempt.

Although plaintiff has presented myriad evidence that strongly suggests defendants have violated the permanent injunction, this court is conscious that finding a party (and certainly a *non*-party as with OBD Hawk) in civil contempt is an extraordinary remedy. "Civil contempt is an appropriate remedy for the enforcement of a judicial decree, but it is a severe one which should be used only when necessary to sustain the authority of the court." *NLRB v. Shurtenda Steaks, Inc.*, 424 F.2d 192, 194 (10th Cir. 1970). And in this case, defendants have not filed anything explaining their position on plaintiffs' motion. *See* Dkt. No. 53, at 2 ("As of the filing date of this submission, BMW has not had any contact with any Defendant and Defendants have not otherwise filed or served any response to BMW's Motion.").

Therefore, to ensure that defendants are afforded adequate due process, this court orders defendants to show cause, within thirty days of the plaintiffs' status report following the close of the expedited discovery period, why they should not be held in civil contempt for violating this court's permanent injunction. Plaintiffs have presented clear and convincing evidence that OBD Hawk is operating as a disguised continuance of Rheingold USA and that its operations violate the injunction. Although defendants were served with plaintiffs' motion and failed to respond, defendants will be afforded another chance to respond before this court's ruling on contempt.

## CONCLUSION AND ORDER

For the reasons above, the court GRANTS in part plaintiffs' motion for contempt and to enforce the parties' settlement agreement, and for expedited discovery. Dkt. No. 41. Plaintiffs are granted expedited discovery for a period of sixty days, after which they must file a status report within fourteen days. Defendants are then ordered to show cause within thirty days of the filing of

plaintiffs' status report why they should not be held in contempt of this court's permanent injunction.

Within seven days of the date of this order, plaintiffs must serve this order on defendants and any attorneys who have appeared on behalf of defendants in this action.

DATED October 30, 2026.

BY THE COURT

________________________________________

Jill N. Parrish
Chief United States District Court Judge
District of Utah